978 P.2d 838

**COUNTY OF KAUA'I and Admiral Insurance Co., Inc., Respondents–Plaintiffs–Appellants,**

v.

**SCOTTSDALE INSURANCE CO., INC., Petitioner–Defendant–Appellee.**

**No. 21262.**

Supreme Court of Hawai'i.

May 27, 1999.

Glen T. Hale, on the petition, Salt Lake City, UT, for the petitioner-appellee Scottsdale Insurance Co., Inc.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

On March 22, 1999, we granted the petitioner-defendant-appellee Scottsdale Insurance Co., Inc.'s (Scottsdale) application for a writ of certiorari to review the memorandum opinion of the Intermediate Court of Appeals (ICA) in *County of Kaua'i v. Scottsdale Insurance Company, Inc.*, No. 21262, mem. op., —— Hawai'i ——, —— P.2d at —— (Haw.Ct. App. Jan. 27, 1999) (hereinafter, the "ICA's majority opinion"). In its application, Scottsdale argues that the ICA erred in holding that a claim for relief alleging "negligent supervision" is distinguishable from "negligent entrustment" in that the former constitutes non-automobile related conduct and, therefore, falls outside of the scope of an automobile exclusion clause contained in a comprehensive law enforcement liability policy. Scottsdale argues that negligent supervision is not a distinct claim for relief in the present case, but, rather, one that arises derivatively out of the use of an automobile.

We agree with Scottsdale that the ICA's majority opinion reached an erroneous result. In contrast to the ICA's majority opinion, we hold (1) that the tort claim of "negligent supervision," asserted against the respondent-plaintiff-appellant County of Kaua'i (County), arose out of the use of a motor vehicle when the injuries complained of resulted from a motor vehicle accident, and, accordingly, (2) that the claim implicated the provisions of the automobile policy exclusion contained in Scottsdale's law enforcement policy.

Accordingly, we reverse the ICA's majority opinion and affirm the circuit court's summary judgment in favor of Scottsdale and against the County and Admiral Insurance Co., Inc. (Admiral) (collectively, "the respondents").

## I. BACKGROUND

### A. Factual History

On September 18, 1992, at approximately 3:30 a.m., Kaua'i Police Department (KPD) Officer Daniel Abadilla had been on duty for approximately four-and-one-half hours. While driving his patrol car on the Kaumua-li'i Highway, Officer Abadilla struck and killed Gilbert Moniz. It appears that Officer Abadilla was traveling in excess of the speed limit and off of the lined portion of the road at the time of the accident. On the previous day, September 17, 1992, Officer Abadilla had worked an eight-hour shift, from 8:00 a.m. to 4:00 p.m. It is uncontested that, at the time of the accident, Officer Abadilla was acting within the course and scope of his employment with the County and was operating a vehicle owned by the County.

### B. The Insurance Policies

At the time of the accident, the County was insured under a "Comprehensive Law Enforcement Liability Policy" (hereinafter, "the law enforcement policy") issued by Scottsdale. The law enforcement policy provided in relevant part that:

> [Scottsdale] will pay on behalf of the [County] all sums which the [County] shall become legally obligated to pay as damages because of WRONGFUL ACT[S] which result in:
>
> A) PERSONAL INJURY
> B) BODILY INJURY
> C) PROPERTY DAMAGE
>
> caused by an OCCURRENCE and arising out of the performance of the [County's] duties to provide law enforcement and/or other departmentally approved activities....
>
> ....
>
> [Scottsdale] shall have the right and duty to defend any suit against the [County] seeking damages on account of such PERSONAL INJURY, BODILY INJURY, or PROPERTY DAMAGE....

The law enforcement policy also included the following relevant exclusion:

> This policy does not apply:
>
> ....

> To BODILY INJURY or PROPERTY DAMAGE arising out of the ownership, maintenance, operation, use, loading or unloading of any (a) AUTOMOBILE ... owned by or operated by or rented or loaned to the [County]; (b) or to any other AUTOMOBILE ... operated by any person in the course of his employment by the [County].

The County had also purchased "Excess Business Automobile Liability" coverage (hereinafter, "the excess liability policy") from Admiral for losses in excess of $300,-000.00, subject to a cap of $700,000.00. The excess liability policy read in relevant part:

> [Admiral] will indemnify the [County] for ultimate net loss in excess of the [County's] retained limit ... which the [County] legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of an Automobile.

### C. The Underlying Lawsuits

On September 7, 1993, Moniz's widow and children filed a complaint against the County and Officer Abadilla. Specifically, the complaint alleged in relevant part:

> The death of Gilbert Moniz was caused by the negligent acts of [the County and Officer Abadilla]. [The County and Officer Abadilla] were negligent in the following respects, as well as other[s]:
>
> ....
>
> c. [The County] failed to adequately protect Gilbert Moniz from the danger presented by [Officer Abadilla], who was working in an unsafe condition without adequate rest and/or time between active duty shifts;
>
> d. [The County] approved and/or condoned and/or required [Officer Abadilla] to work in an unsafe and/or unfit condition when [the County] knew or should have known that [Officer Abadilla] worked a full day[']s shift at the KAUA'I Police Department Gun Range prior to working a full night shift at the time of the accident;

e. [The County] failed to properly train, supervise, hire and discharge[ ] [its] employees and/or agents including but not limited to [Officer Abadilla];

. . . .

As a direct and proximate result of the negligence and tortious conduct of [the County and Officer Abadilla], Gilbert Moniz suffered severe injuries which caused his death.

Moniz's widow and children filed a second complaint against the County and Officer Abadilla on the same day, alleging in relevant part that "[the County and Officer Abadilla] have been and/or are now involved in a concerted effort to cover up the true facts and circumstances surrounding the death of Gilbert Moniz. . . ."

 Upon service of the complaints filed by Moniz's widow and children, it appears that the County contacted its insurance agent, Jardine Insurance Brokers Hawaii, Inc. (Jardine). Jardine notified Scottsdale of the pending actions. Scottsdale agreed to defend the second Moniz lawsuit, but refused to defend or cover the first. Several letters among the County, Admiral, and Scottsdale, written in 1994, indicate that Scottsdale and Admiral engaged in settlement discussions regarding the first Moniz lawsuit. At one point during the settlement negotiations, Scottsdale noted in a letter, "[w]e feel there is very little actual police liability in this case and therefore feel that our present position is quite generous."[1]

The County and Moniz's widow and children settled the first lawsuit for $715,000.00. Admiral requested that Scottsdale contribute fifty percent of the $715,000.00. On May 16, 1995, Scottsdale refused Admiral's request by letter, citing the automobile exclusion in Scottsdale's policy and declaring that "it would seem readily apparent that[,] if there had been no automobile accident, all other allegations would be moot."

### D. *Procedural History*

On May 15, 1996, the respondents filed the complaint against Scottsdale that gave rise to the present appeal. The complaint alleged that Scottsdale owed the County "defense and coverage" with respect to the two Moniz lawsuits because "[a]mong the factors alleged in the lawsuits to have contributed to the cause of the death of Mr. Moniz were allegations . . . that the police department wrongfully scheduled one of its officers for an excessive number of hours prior to the accident[,] causing the officer to be too fatigued to carefully carry out his duties as a patrol officer."

After filing an answer, Scottsdale moved for summary judgment on February 20, 1997. In its memorandum in support of the motion for summary judgment, Scottsdale argued that "there is no possibility that coverage exists and, consequently, the [respondents'] claims . . . must fail." On March 17, 1997,

---

**1.** We note that this letter became part of the record as an exhibit attached to the respondents' cross-motion for summary judgment. We further note that Scottsdale did not object, pursuant to Hawai'i Rules of Evidence (HRE) Rule 408 (1993) (providing in relevant part that "[e]vidence of conduct or statements made in compromise negotiations" is generally inadmissible), to the inclusion of the letter in the record. We therefore do not reach the question whether an objection to the admissibility of the letter, based on HRE Rule 408, would have been well taken.

The respondents argue that the statement in the letter was an admission of liability, and, therefore, that Scottsdale was estopped from denying coverage in the underlying lawsuit. However, "absent manifest injustice, 'the party invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable.' " *State Farm* *Mut. Auto. Ins. Co. v. GTE Hawaiian Telephone Co.,* 81 Hawai'i 235, 244, 915 P.2d 1336, 1345 (1996) (quoting *AIG Hawai'i Ins. Co. v. Smith,* 78 Hawai'i 174, 179, 891 P.2d 261, 266, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995)); *see also Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 140–41, 920 P.2d 334, 354–355 (1996); *Doherty v. Hartford Ins. Group,* 58 Haw. 570, 573, 574 P.2d 132, 134–135 (1978). Without deciding the matter, but assuming *arguendo* that Scottsdale's statement constituted an "admission," the respondents have adduced no evidence demonstrating that they relied—to their detriment or otherwise—on Scottsdale's "admission" of liability. The defendant has the burden of proof under the affirmative defense of equitable estoppel. *Coelho v. Fernandez,* 46 Haw. 578, 583, 384 P.2d 527, 530 (1963). The respondents in the present case have not met their burden; accordingly, their estoppel argument fails.

the respondents filed a memorandum in opposition to Scottsdale's motion and a cross-motion for summary judgment.

On July 31, 1997, the circuit court entered an order granting Scottsdale's motion for summary judgment.[2] Final judgment was entered in favor of Scottsdale and against the respondents on December 9, 1997. The respondents filed a timely notice of appeal on January 7, 1998.

The ICA filed a memorandum opinion on January 27, 1999. The ICA's majority opinion vacated the circuit court's judgment, concluding that "Scottsdale had a duty to defend based on the 'mere possibility' of coverage created by the allegations that the County overworked or failed to properly train and/or supervise Officer Abadilla." ICA's majority opinion at 16. The ICA's majority opinion grounded its holding in the proposition that

> [t]he negligent supervision claim is a separately recognized cause of action, and it is non-auto related conduct which is outside the scope of the motor vehicle exclusion clause. Therefore, "the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence."

*Id.* (quoting *United States Fidelity & Guar. Co. v. State Farm Mut. Ins. Co.*, 107 Ill. App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663, 667 (1982)).

In her dissent (hereinafter, the "dissent"), Judge Watanabe noted:

> ... The fact that Officer Abadilla may have been overworked, tired, and improperly trained or supervised as a result of the County's negligence [ ] is irrelevant unless Officer Abadilla drove a vehicle "in a negligent manner ... and in fact inflicted injury as a result of such conduct."
> *[Hawaiian Ins. & Guar. Co. v. Chief Clerk*

*of the First Circuit* ], 68 Haw. 336,] 341, 713 P.2d [427,] 431 [ (1986) ]. Stated otherwise, any negligence on the part of the County in allowing Officer Abadilla to drive on the occasion in question was separate from Officer Abadilla's negligence " 'only in the fact that [the County's negligence] preceded the collision.' " *Id.* at 340, 713 P.2d at 430. The County's alleged negligent conduct was "not exclusive of, but, rather, ... derived from the more general concepts of ownership, operation, and use of a motor vehicle." *Id.* at 341, 713 P.2d at 431.

Dissent at 4 (ellipsis points in original). Judge Watanabe concluded that the automobile exclusion contained in the law enforcement policy was applicable to the facts of the case, and that Scottsdale therefore owed no duty to indemnify or defend the County. Dissent at 5.

The ICA filed an "order of amendment" on January 29, 1999.[3] On February 9, Scottsdale filed a motion for reconsideration. The ICA denied Scottsdale's motion on February 16. Scottsdale's timely application for a writ of certiorari was filed on March 18, 1999.

## II. STANDARD OF REVIEW

We review [a] circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

**2.** The order, improperly designated a "Judgment of Dismissal," read in relevant part:

> Now therefore, the court hereby orders that [Scottsdale's] motion for summary judgment is hereby granted and that all causes of action filed by [the respondents] against [Scottsdale] are dismissed with prejudice on the basis that no issue of material fact exists and that, as a matter of law, [Scottsdale] owes no duty to defend or indemnify [the respondents] because the underlying complaint does not contain alle-

gations which create the possibility that coverage exists.

As the text of the order makes clear, the circuit court's purpose was to grant Scottsdale's motion for summary judgment and not to dismiss the respondents' complaint.

**3.** The order of amendment simply ordered that page ten of the memorandum opinion, which had been omitted inadvertently, be inserted and made a part of the opinion.

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Konno v. County of Hawai'i*, 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen*, 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)) (brackets in original). "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina*, 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire*, 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

*State Farm Mut. Auto. Ins. Co. v. Murata*, 88 Hawai'i 284, 287–88, 965 P.2d 1284, 1287–88 (1998) (quoting *Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 269–270, 948 P.2d 1103, 1110–1111 (1997) (quoting *Morinoue v. Roy*, 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997))) (brackets in original).

### III. *DISCUSSION*

■ The ICA's majority opinion, relying solely on *United States Fidelity & Guaranty Company v. State Farm Mutual Insurance Company*, 107 Ill.App.3d 190, 63 Ill.Dec. 14,

437 N.E.2d 663 (1982) (*USF & G I*), and *United States Fidelity & Guaranty Company v. State Farm Mutual Insurance Company*, 152 Ill.App.3d 46, 105 Ill.Dec. 254, 504 N.E.2d 123 (1987), *appeal denied*, 115 Ill.2d 551, 110 Ill.Dec. 466, 511 N.E.2d 438 (1989) (*USF & G II*), held that Scottsdale owed a duty to defend *based on* the County's alleged negligent supervision of Officer Abadilla. ICA's majority opinion at 14–17. The underlying lawsuit at issue in both of the *USF & G* decisions arose out of a child's fall from an automobile while she was being driven from a day care center to a dance class by an employee of the day care center. *USF & G I*, 63 Ill.Dec. 14, 437 N.E.2d at 664. Neither decision involved, as does the present case, an allegation that, because of an employer's inadequate supervision of *its employee*, the employee actionably caused damage to someone else. Instead, the *USF & G* decisions involved allegations that the defendant employee had been negligent in failing to supervise *the injured party* in order to prevent *that* party from being injured. Accordingly, the holdings of *USF & G I* and *USF & G II*—that the defendant employee's failure to supervise was a separate, concurrent cause of the accidents—are inapposite.[4]

Much closer to the facts at hand are this court's opinions in *Fortune v. Wong*, 68 Haw. 1, 702 P.2d 299 (1985), and *Hawaiian Insurance & Guaranty Company v. Chief Clerk of the First Circuit Court*, 68 Haw. 336, 713 P.2d 427 (1986) (*HIG*). In *Fortune*, the plaintiff alleged that his minor son had been injured when he was struck by a motor vehicle driven by another minor, whose parents, the defendants, were holders of a homeowner's insurance policy and alleged to be liable pursuant to Hawai'i Revised Statutes (HRS) § 577–3.[5] 68 Haw. at 4, 702 P.2d at 302. Like the law enforcement policy in the

---

4. We note that the *USF & G* decisions were later criticized in another decision in the same jurisdiction. *See Allstate Ins. Co. v. Smiley*, 276 Ill. App.3d 971, 213 Ill.Dec. 698, 659 N.E.2d 1345, 1354 (1995), *rehearing denied* (1996) (observing that "[b]y intermingling contract and tort principles, *USF & G*'s approach fails to recognize that tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that

determination is subject to the rules of contract construction, and not tort principles" (internal quotation signals and citation omitted)).

5. HRS § 577–3 (1985 & 1993) provides in relevant part that "[t]he father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children[.]"

present case, the defendants' homeowner's policy in *Fortune* excluded "bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by . . . any Insured." *Id.* at 10, 702 P.2d at 305.

This court acknowledged that it had "long subscribed to the principle[s] that [insurance policies are contracts of adhesion and are to be] construed liberally in favor of the insured and [that] ambiguities [are to be] resolved against the insurer," but noted that "the rule is not applied without exception upon mere assertions of ambiguity. Rather, ambiguity is found [and the rule is followed] only when the contract taken as a whole is reasonably subject to differing interpretation." *Id.* at 10, 702 P.2d at 306 (citations and internal quotation marks omitted) (some brackets added and some in original). The *Fortune* court further observed that "what we are committed to enforce are [t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts." *Id.* at 10–11, 702 P.2d at 306 (citations and internal quotation marks omitted). With respect to the facts before it, the *Fortune* court engaged in the following analysis:

> The homeowner's policy declared in unambiguous language that it did not apply to bodily injury arising from the operation of a motor vehicle by an insured. The complaint in the personal injury action charged that [the defendants' minor son] drove a motor vehicle in a negligent fashion, his negligence resulted in bodily injury, and his parents were liable for damages. Inasmuch as a court "cannot rewrite the contract of the parties," 12 G. Couch, *Cyclopedia of Insurance Law* (2d. ed.) § 44A:2 (1981) (footnote omitted), we cannot say liability for [the defendants' minor son's] negligence was within the intendment of the parties.
>
> Nor are there grounds for inferring the insured could have reasonably expected their homeowner's policy to insure the risk of [their son's] negligence in driving. "Generally speaking, the personal liability provisions of a homeowner's policy bind the insurer to pay damages for which the insured shall become liable as a result of accidents in and around his home." *Herzog v. National American Insurance Co.*, 2 Cal.3d 192, 197, 84 Cal.Rptr. 705, 707, 465 P.2d 841, 843 (1970) (footnote omitted). The use of an automobile "presents hazards not closely associated with the home, for which other insurance is customarily carried and is generally understood to afford coverage." *Id.* (footnote omitted). . . .

*Id.* at 11, 702 P.2d at 306.

In *HIG*, this court extended its holding in *Fortune* to claims of negligent entrustment. *HIG* involved a declaratory judgment action filed by a homeowner's insurer, praying for a judgment that it was not obligated to defend its insured in a tort action stemming from a fatal automobile accident that had occurred when a minor was driving a car owned by the named insured and entrusted to the minor by the named insured's son. 68 Haw. at 338–39, 713 P.2d at 429. The homeowner's insurance policy at issue contained a motor vehicle exclusion substantially similar to the one before us in the present case. *Id.* at 338, 713 P.2d at 429. The defendant-insureds in the underlying tort action argued that "the tort of negligent entrustment arises out of an individual's personal conduct (*i.e.*, his 'entrustment') rather than that individual's 'ownership, maintenance, operation, use, loading or unloading' of an automobile" and that "[t]he claim of negligent entrustment is a separate and independent cause of action not related to use of the automobile." *Id.* at 340, 713 P.2d at 430 (internal quotation marks omitted). The *HIG* court rejected the defendant-insureds' arguments, holding that

> the conduct of [the defendant-insureds] relative to the fatal accident was separate "only in the fact that it preceded the collision." *Safeco Insurance Co. v. Gilstrap*, 141 Cal.App.3d 524, 527, 190 Cal.Rptr. 425, 427 (1983). For it is clear "that [the] negligent entrustment [of an automobile] is irrelevant unless the person to whom [it] is entrusted acts in a negligent manner (creates an unreasonable risk) and in fact inflicts injury as the result of such conduct." *Bankert v. Threshermen's Mutual Insurance Co.*, 110 Wis.2d 469, 476, 329 N.W.2d 150, 153 (1983); *Correira v. Liu*, 28 Haw.

145, 148 (1924). Or as the Supreme Judicial Court of Massachusetts has put it, the "'negligent entrustment' [of an automobile] as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle." *Barnstable County Mutual Fire Insurance Co. v. Lally*, 374 Mass. 602, 605–06, 373 N.E.2d 966, 969 (1978).

*Id.* at 340–41, 713 P.2d at 430–31 (some brackets added and some in original) (footnote omitted).

In the present case, the ICA held that negligent supervision and negligent entrustment are distinct torts. ICA's majority opinion at 13–16. The ICA reasoned that, whereas negligent entrustment is, *per se,* derived from the use of a motor vehicle, negligent supervision is not necessarily so linked. However, "a number of courts construing claims of negligent supervision and negligent entrustment have held that the two are basically synonymous for [purposes] of [the automobile] exclusion [contained in an insurance policy]." *Love ex rel. Smith v. McDonough*, 758 F.Supp. 397, 402 (S.D.Miss.), *aff'd*, 947 F.2d 1486 (5th Cir.1991) (citing *Northern Ins. Co. of New York v. Ekstrom*, 784 P.2d 320 (Colo.1989), and *Great Central Ins. Co. v. Roemmich*, 291 N.W.2d 772 (S.D.1980)). *See also State Farm Fire & Cas. Co. v. Estate of Evoniuk*, 681 F.Supp. 662, 663 (N.D.Cal. 1988) (holding that "negligent supervision is inseparable from the use of the motor vehicle"); *Lahey v. Benjou*, 759 P.2d 855, 857 (Colo.Ct.App.1988) (finding "no practical difference" between negligent supervision and negligent entrustment under similar circumstances); *Taylor v. American Fire and Cas. Co.*, 925 P.2d 1279, 1282–83 (Utah Ct.App. 1996) (holding that negligent supervision is "inextricably intertwined with the motor vehicle" involved in the accident and collecting decisions from fourteen other jurisdictions reaching the same holding), *cert. denied*, 936 P.2d 407 (Utah 1997).

This court need not decide whether alleged negligent supervision is *always* linked to the use of an automobile when an automobile is involved in an accident. As discussed *supra,* the complaint in the underlying lawsuit al-leged that the County's liability, if any, stemmed from Officer Abadilla's driving a patrol car belonging to the County. On these facts, the County's liability for negligent supervision, in the words of the *HIG* court, "is not exclusive of, but, rather[,] is derived from" Officer Abadilla's use of the vehicle. That being so, we hold that the County's liability, if any, "arises out of" the "use" of a motor vehicle and that the automobile exclusion applies. Accordingly, Scottsdale had no duty to indemnify the County of Kaua'i in the present case.

## IV. CONCLUSION

Based on the foregoing analysis, we (1) reverse the ICA's majority opinion and (2) affirm the circuit court's summary judgment in favor of Scottsdale and against the respondents.