112 P.3d 717

**OAHU TRANSIT SERVICES, INC.,**
Plaintiff–Appellant/Appellee,

v.

**NORTHFIELD INSURANCE COMPANY,**
Defendant–Appellee/Appellee,

and

Aloha State Cab, Inc., John Does 1–5, John Doe Corporations 1–5, John Doe Partnerships 1–5, Roe Non–Profit Corporations 1–5 and Roe Governmental Agencies 1–5, Defendants.

Northfield Insurance Company, Third–Party Plaintiff–Appellee/Appellee,

v.

City and County of Honolulu, Third–Party Defendant–Appellee/Appellant.

No. 25704.

Supreme Court of Hawai'i.

May 31, 2005.

Wesley H.H. Ching and Sheree Kon–Herrera (of Fukunaga Matayoshi Hershey & Ching, LLP), Honolulu, on the briefs, for plaintiff-appellant/appellee Oahu Transit Services, Inc.

Kevin P.H. Sumida (of Matsui Chung Sumida & Tsuchiyama), Honolulu, on the briefs, for third-party defendant-appellee/appellant City and County of Honolulu.

Gregory K. Markham, Keith K. Kato, and Jeffrey S. Masatsugu (of Chee & Markham), Honolulu, on the briefs, for defendant-appellee/appellee Northfield Insurance Company.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiff-appellant Oahu Transit Services, Inc. (OTS) and third-party defendant-appellant City and County of Honolulu [hereinafter, "the City"] appeal from the Circuit Court of the First Circuit's March 18, 2003 first amended judgment.[1] As points of error, OTS and the City contend that the circuit court erred in issuing its March 28, 2002 order granting summary judgment in favor of defendant-appellee/third-party plaintiff-appellee Northfield Insurance Company (Northfield) and denying summary judgment in favor of OTS and the City.

The main issue on appeal is whether an automobile exclusion clause in a Commercial General Liability (CGL) insurance policy (providing that no coverage exists for "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto' ... owned or operated by or rented or loaned to

---

1. The Honorable Virginia Lea Crandall presided over this matter.

any insured") applies so as to bar coverage in the instant case. We hold that the circuit court correctly concluded that this exclusion applies and that Northfield is not required to defend or indemnify OTS or the City.

## I. BACKGROUND

### A. The Parties

OTS operates transit services, including paratransit services, for the City. In addition to operating "TheBus" and "TheHandi–Van," OTS contracted with private corporations to provide supplemental services. One such private corporation was Aloha State Cab, Inc. (Aloha State).

### B. The Accident

On May 27, 2000, Aloha State was assigned the job of transporting Roy Muramoto to a dialysis appointment. While in transit to the appointment, Muramoto's wheelchair tipped over and Muramoto was pinned in the corner of the van. The driver stopped the van and went to assist Muramoto; Muramoto was strapped into his wheelchair by a belt connected to the chair, and—according to the driver—Muramoto asked the driver to disconnect the belt because Muramoto was pinned in the corner and uncomfortable. The driver complied, but when the belt was released, Muramoto collapsed to the floor. Muramoto suffered a spinal cord injury and paralysis of his diaphragm as a result. The record suggests that most, if not all, of Muramoto's injuries occurred when Muramoto collapsed to the floor: the driver had indicated that, when Muramoto was pinned in the cor-

ner prior to releasing the belt, Muramoto did not appear to be in distress.

### C. The CGL Policy

At the time of the accident, Aloha State had a CGL policy with Northfield. This same CGL policy also listed OTS as an additional insured party. However, although OTS was listed as an additional insured, the CGL policy covered OTS "only with respect to liability arising out of [Aloha State's] operations or premises owned by or rented to [Aloha State]." [2]

The CGL policy provided that Northfield "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [3] The policy also contained the following exclusion, which is the focus of the instant case:

This insurance does not apply to:

. . . .

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". [4]

(This exclusion will hereinafter be referred to as "the CGL automobile exclusion.")

### D. Procedural History

On August 30, 2001, Muramoto filed his Second Amended Complaint against the City, OTS, and Aloha State. Muramoto's Second Amended Complaint brought claims for relief based on negligence; respondeat superior;

---

2. The CGL policy also listed The State of Hawaii's Department of Transportation, Department of Human Services, and Department of Land and Natural Resources as additional insureds.

3. The CGL policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The policy's definition of "property damage" is not relevant to the instant case.

4. The CGL policy defined "loading or unloading" as follows:

"Loading or unloading" means *the handling of property:*

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

(Emphasis added.) The applicability of this definition to the instant case is discussed in note 8, *infra.*

agency; breach of duty owed by common carrier; the Americans with Disabilities Act; breach of duty to comply with federal and state law; negligent selection, supervision, and training; breach of express or implied warranty; and ratification.

OTS tendered its defense of Muramoto's suit to Northfield pursuant to the terms of Aloha State's CGL policy. Northfield denied coverage, stating that the CGL automobile exclusion applied (such that neither Aloha State nor OTS was entitled to coverage).

On October 5, 2001, OTS filed a declaratory judgment action against Northfield, seeking a declaration that the CGL policy provided OTS with coverage for Muramoto's suit. On November 15, 2001, Northfield filed a counterclaim against OTS, a cross-claim against Aloha State, and a third-party complaint against the City, each of which sought a judicial declaration that Northfield was not obligated to defend or indemnify based on the CGL policy. The City then filed a counterclaim against Northfield. OTS filed a motion for summary judgment on December 28, 2001, arguing that Northfield had a duty to defend and indemnify OTS with respect to Muramoto's lawsuit; the City joined this motion on February 15, 2002. Northfield filed a counter-motion for summary judgment on January 31, 2002.

On March 28, 2002, the circuit court granted Northfield's motion for summary judgment and denied OTS's motion (which had been joined by the City) for summary judgment. The circuit court entered final judgment in favor of Northfield, and OTS and the City filed timely notices of appeal.[5]

## II. STANDARD OF REVIEW

 We review the circuit court's grant or denial of summary judgment *de novo*. *Hawai'i Community Federal Cred-*

it Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City & County of Honolulu,* 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (alteration in original).

## III. DISCUSSION

### A. OTS And The City Are Subject To The CGL Automobile Exclusion.

 As an initial matter, both OTS and the City are subject to the CGL policy's restrictions, including the CGL automobile exclusion.

Both Aloha State and OTS were listed as insured parties, and the exclusion applied to any automobile "owned or operated by or rented or loaned to *any* insured" (emphasis added). OTS is a named insured, such that the exclusion applies to OTS even if OTS itself did not own or operate the automobile.[6]

---

5. In the meantime, however, Aloha State failed to respond to any of the complaints against it. Both OTS and Northfield requested entry of default against Aloha State as to their respective complaints, and the requests were granted.

6. *See, e.g., Travelers Indem. Co. v. Citgo Petroleum Corp.,* 166 F.3d 761 (5th Cir.1999). In *Citgo,* Citgo's franchisee had a CGL policy and Citgo was named as an additional insured; however,

just like in the instant case, Citgo was only an insured to the extent that it was held liable for the franchisee's acts or omissions. *Id.* at 769 & n. 10. Although Citgo argued that the automobile exclusion did not apply to it because it did not own or operate the vehicle in question, the court disagreed: the court held that if the automobile exclusion applied to the franchisee, it also applied to Citgo—even though Citgo itself did not own or operate the vehicle in question—because

Similarly, the City is subject to the CGL automobile exclusion as well. In its contract with the City, Aloha State agreed to indemnify the City against any claims brought against the City arising from Aloha State's negligence. The CGL policy insured Aloha State against this type of contractual liability, but only to the extent that Aloha State "becomes legally obligated to pay ... damages because of 'bodily injury' or 'property damage' to which this insurance applies." In other words, if Aloha State was entitled to coverage for a particular occurrence of bodily injury or property damage, Aloha State would be entitled to coverage for its contractual obligation to indemnify a third party for liability arising from that occurrence as well. If the CGL policy did not apply to Aloha State (i.e., if one of the exclusions in the CGL policy barred coverage for Aloha State), then the indemnitee (the City) would not be entitled to coverage either. Additionally, the CGL policy specifically excluded coverage for any damages arising from the sole negligence of the indemnitee. Consequently, if we conclude that the automobile exclusion applies to Aloha State, the exclusion also bars the City from recovering from Northfield.

In sum, if the CGL automobile exclusion in the instant case applies at all, it applies equally to Aloha State, OTS, and the City.

### B. The CGL Automobile Exclusion Applies In The Instant Case.

The circuit court correctly granted summary judgment in favor of Northfield because all of Muramoto's injuries arose from the use or operation of an automobile. Subsection 1, infra, discusses the phrase "arising from the use or operation of an automobile" and concludes that this unambiguous phrase should be accorded the same interpretation in the context of a CGL policy exclusion and in the context of an automobile insurance coverage clause. Subsection 2, infra, applies this principle to the facts of the instant case and concludes that OTS and the City are not entitled to coverage because Muramoto's injuries arose from the use or operation of an automobile. Subsection 3, infra, rejects OTS's and the City's arguments that coverage exists based on Muramoto's allegations of negligent hiring, supervision, and training; where liability stems solely from an auto-related cause, the CGL automobile exclusion will not be negated simply because the injured party's complaint alleges various theories of liability.

1. **Because the phrase "arising from the use or operation of an automobile" is unambiguous, it has the same meaning regardless of whether the phrase appears in an automobile insurance coverage clause or a CGL policy exclusion.**

While the applicability of the phrase "arising out of the ownership, maintenance, [or] use" is not entirely clear in every case, the phrase itself is unambiguous. As this court stated in Fortune v. Wong, 68 Haw. 1, 11, 702 P.2d 299, 306 (1985):

> The homeowner's policy declared in unambiguous language that it did not apply to bodily injury arising from the operation of a motor vehicle by an insured. The complaint in the personal injury action charged that Ronald Wong drove a motor vehicle in negligent fashion, his negligence resulted in bodily injury, and his parents were liable for the damages. Inasmuch as a court "cannot rewrite the contract of the parties," 12 G. Couch, Cyclopedia of Insurance Law (2d ed.) § 44A:2 (1981) (footnote omitted), we cannot say liability for Ronald Wong's negligence was within the intendment of the parties.

(Emphasis added.) If the CGL automobile exclusion were ambiguous, this court would construe this phrase in favor of the insured; if this same ambiguous phrase also appeared in a coverage clause in an automobile policy, this court would still interpret this phrase in favor of the insured. Thus, if the phrase were ambiguous, this court could afford differing interpretations to the phrase depending on whether the phrase appeared in a coverage clause or an exclusionary clause.[7]

---

the exclusion applied to automobiles owned or operated by "any insured." Id. at 769–70.

7. As this court stated in Hawaiian Insurance & Guaranty Co., Ltd. v. Chief Clerk of First Circuit

However, because the phrase "arising out of the ownership, maintenance, [or] use" is *unambiguous,* this court need not interpret the phrase differently depending on whether the phrase appears in a coverage clause or an exclusionary clause. *See Hawaiian Ins. & Guar. Co., Ltd. v. Chief Clerk of First Circuit Court,* 68 Haw. 336, 342, 713 P.2d 427, 431 (1986) (holding that the plain language of the insured's homeowner's policy excluded coverage for injuries arising out of an automobile accident); *see also N. Ins. Co. of N.Y. v. Ekstrom,* 784 P.2d 320, 323 (Colo.1989) (declining to give the phrase "arising out of" different meanings depending on whether the phrase appeared in a coverage clause or an exclusionary clause). Therefore, this court may look to its interpretations of the phrase "arising out of the ownership, maintenance, [or] use" in the context of automobile insurance coverage clauses and apply these interpretations to the CGL automobile exclusion at issue in the instant case.

**2. The automobile exclusion bars coverage in the instant case because Muramoto's injuries arose from the use or operation of an automobile.[8]**

 In the context of an automobile insurance coverage clause, this court has ap-

plied the following three-factor test to determine whether injuries arose from the use or operation of a motor vehicle:

> The first factor [is] whether the ... motor vehicle was an active accessory in causing [the] plaintiff's injuries....
>
> The second factor [is] whether there was an independent act breaking the causal link between "use" of the vehicle and the injuries inflicted....
>
> The third factor [is] whether the injuries resulted from use of the vehicle for transportation purposes[.]

*Chock v. Gov't Employees Ins. Co.,* 103 Hawai'i 263, 267–68, 81 P.3d 1178, 1182–83 (2003) (citing *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 640–41, 851 P.2d 321, 330–31 (1993) (citing *Cont'l W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877–79 (Minn. 1987))). *See also* HRS § 431:10C–103 (Supp. 2004) (providing in relevant part that, for purposes of Hawaii's Motor Vehicle Insurance Law, " 'Operation, maintenance, or use with respect to a motor vehicle' includes occupying, entering into, and alighting from it, but does not include ... [c]onduct in the course of loading or unloading the vehicle, unless the accidental harm occurs in the immediate proximity of the vehicle[.]").[9] Be-

*Court,* 68 Haw. 336, 341–42, 713 P.2d 427, 431 (1986):

> True, we have said more than once that insurance policies are contracts of adhesion ... premised on standard forms prepared by the insurer's attorneys, ... [and] they must be construed liberally in favor of the insured and the ambiguities resolved against the insurer. But the rule of construction urged upon us is not for application whenever insurer and insured simply disagree over the interpretation of the terms of a policy and there is an assertion of ambiguity. Ambiguity exists and the rule is followed only when the [policy] taken as a whole, is reasonably subject to differing interpretation. Absent an ambiguity, the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech....

(Internal quotation signals and citations omitted.) (Alterations in original.)

**8.** This section addresses the applicability of the CGL automobile exclusion. In its answering briefs, Northfield argues that Muramoto's injuries all arise from the use of an automobile and are therefore excluded. In so arguing, however, Northfield makes repeated references to the "loading and unloading" of the HandiVan. For

example, in its Answering Brief to the City's Opening Brief, Northfield states: "The alleged improper training of the driver leading to improper seating and securing is, in essence, negligent loading of the van. The alleged improper disengagement of Marumoto [sic] from his wheelchair is, in essence, negligent unloading of the van." Similarly, in its Answering Brief to OTS's Opening Brief, Northfield argues that "Muramoto's 'injuries' are all rooted in the operation, use, loading or unloading of the 'Handi–Van' and are therefore excluded under the auto exclusion."

Northfield's repeated references to "loading and unloading" stem from the CGL automobile exclusion, which provides in relevant part that "Use includes operation and 'loading or unloading'." This policy provision is inapplicable in the instant case, however. The CGL policy defines "loading and unloading" as "the handling of *property* " under certain circumstances. (Emphasis added.) A passenger is not property, such that this additional refinement of the term "use" in the CGL policy is not helpful to Northfield.

**9.** Additionally, as one treatise explained:

> In determining whether an accident arose out of the use of the automobile, the totality of

cause the phrase "arising out of the owner-ship, maintenance, use or entrustment to others of any . . . 'auto' " has the same meaning in the context of an automobile coverage clause as it does in a CGL automobile exclusion clause, we use this same three-factor test to determine whether injuries arose from the use of an automobile for purposes of applying the CGL automobile exclusion.

 Applying this three-factor test to the instant case, we conclude that Muramoto's injuries arose from the use or operation of an automobile and are therefore excluded from coverage. The first factor—whether the van in which Muramoto was traveling was an "active accessory" in causing his injuries—weighs in favor of Northfield. Muramoto's wheelchair tipped over while the van was moving, causing him to be pinned in the corner of the van; he was injured when the driver tried to assist him from this position. As this court has stated, "The use of an automobile naturally includes getting in and out of it." [10] *Wong Chee v. Yee Wo Chan Co.,* 26 Haw. 785, 801 (1923), *overruled on other grounds, Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 647–49, 636 P.2d 721, 724–26 (1981). *See also* 8 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance 3d,* § 119:47 at 119–68 (1997) ("The insuring term 'use or operation' encompasses more than just driving a vehicle, and includes all activities necessarily part of driving the vehicle, such as getting in and getting out.").[11] Even though

Muramoto was injured after the van had stopped moving, the van was an active accessory in causing his injuries.

The second factor—whether there was an independent act breaking the link between "use" of the vehicle and Muramoto's injuries—does not clearly weigh in favor of either party. The van was stopped, such that the driver's negligence in unbuckling Muramoto could be seen as an independent act that was separate from the use of the van for transportation purposes (particularly because Muramoto appears to have suffered all of his injuries from his fall, rather than being injured by the tipping of his wheelchair and having those injuries exacerbated by the driver's subsequent actions). However, Aloha State was in the business of transporting passengers in automobiles, and Muramoto's injuries occurred while he was being transported in an automobile; therefore, the driver's act in releasing Muramoto's buckle is not particularly "independent" from the use of an automobile.

The third factor—whether Muramoto's injuries resulted from use of the van for transportation purposes—clearly weighs in favor of Northfield as well, as Muramoto was injured while traveling as a passenger in an Aloha State van. *See Wong Chee,* 26 Haw. at 801 ("The use of an automobile naturally includes getting in and out of it."); 8 *Couch on Insurance 3d,* § 119:47 at 119–68.

the circumstances surrounding or leading up to the accident should be examined. "Use" must be such use as arises out of the inherent nature of the automobile. Thus, whether an injury is one arising out of the use of an insured vehicle may be determined by whether the use is reasonably consistent with the inherent nature of the vehicle, and it does not matter whether the insured's act takes place in actual operation of the vehicle or in some other use.

8 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance 3d,* § 119:37 at 119–56 (1997) (footnotes omitted).

**10.** After making this statement, the court states: "That one does so negligently may constitute contributory negligence. But contributory negligence is no defense to a claim for compensation." *Wong Chee v. Yee Wo Chan Co.,* 26 Haw. 785, 801 (1923). *Wong Chee* involved a claim for workers' compensation benefits; the employee died after falling from an automobile while on

his way to collect an account for his employers, and this court held that the employee's widow was entitled to benefits because the accident arose out of the decedent's employment. *Id.* at 787, 800–02.

**11.** Furthermore, as explained in 6B Appleman, *Insurance Law and Practice* (Buckley ed.) § 4316, Supp. at 103 (Supp.2004):

Automobile coverage exists for injuries arising out of the use of an insured vehicle when the use of the vehicle has some causal connection to the injuries. The causal requirement has been held to be more than "but-for" causation, but less than legal, proximate cause. That is, to prove causation under a policy covering losses arising from "use" of a covered vehicle, the plaintiff need only show that the injury originated in, grew out of, or flowed from the use of the vehicle, not that the vehicle itself was the source of the injury.

(Footnotes omitted.)

Applying these three factors, we conclude that Muramoto's injuries arose out of the use or operation of an automobile. Consequently, the CGL automobile exclusion bars coverage in the instant case and the circuit court correctly granted summary judgment in favor of Northfield.

### 3. The theories of liability presented in Muramoto's complaint do not determine the existence of coverage.

Muramoto's complaint alleges, *inter alia,* that OTS and the City were negligent in hiring, training, and supervising Muramoto's driver. These seemingly non-auto-related allegations are insufficient to require Northfield to defend or indemnify OTS or the City, however, because OTS's and the City's liability for Muramoto's injuries arises solely from the use of a motor vehicle.

In *County of Kaua'i v. Scottsdale Insurance Co., Inc.,* 90 Hawai'i 400, 978 P.2d 838 (1999), we held that a comprehensive law enforcement insurance policy, which contained an automobile exclusion, did not cover the insured against a claim for negligent supervision because the insured's liability stemmed from an automobile accident. In that case, an on-duty police officer was driving his patrol car outside the lined portion of the road and in excess of the speed limit when he struck and killed Gilbert Moniz. *Id.* at 402, 978 P.2d at 840. Moniz's family sued the County of Kaua'i based on the theory of negligent supervision: the officer had worked the previous day from 8:00 a.m. until 4:00 p.m. and then again from 11:00 p.m. until the accident at 3:30 a.m., and Moniz's family claimed that the County's negligence in scheduling the officer for too many work hours caused the officer to be fatigued, thereby causing the accident. *Id.* at 402–03, 978 P.2d at 840–41. We held that the County was not entitled to insurance coverage for Moniz's family's suit because "the County's liability, if any, 'arises out of' the 'use' of a motor vehicle [such] that the automobile exclusion applies." *Id.* at 407, 978 P.2d at 845.

*Scottsdale Insurance* followed this court's decision in *Hawaiian Insurance & Guaranty Co. v. Chief Clerk of the First Circuit Court,* 68 Haw. 336, 713 P.2d 427 (1986) [hereinafter, *HIG* ], in which this court held that a claim for negligent entrustment of an automobile was not covered by a homeowner's insurance policy. In *HIG,* the insured had entrusted her car to an unlicensed minor driver. The unlicensed minor driver was involved in an accident with two other cars, resulting in the deaths of five minors and serious injury to another, and the survivor and the decedents' estates brought actions against the owner for negligent entrustment. *HIG,* 68 Haw. at 338–39, 713 P.2d at 429. This court held that the insured's homeowner's policy, which contained an automobile exclusion, did not entitle the insured to a defense or indemnification:

> [I]t may be negligence to entrust an automobile to an incompetent driver, *see Restatement (Second) of Torts* § 308 (1965), and the entrustment . . . was an act separate from [the driver's] operation of the car. Still, the conduct of [the owner] and her son relative to the fatal accident was separate "only in the fact that it preceded the collision." *Safeco Insurance Co. v. Gilstrap,* 141 Cal.App.3d 524, 527, 190 Cal. Rptr. 425, 427 (1983). For it is clear "that [the] negligent entrustment [of an automobile] is irrelevant unless the person to whom [it] is entrusted acts in a negligent manner (creates an unreasonable risk) and in fact inflicts injury as the result of such conduct." *Bankert v. Threshermen's Mutual Insurance Co.,* 110 Wis.2d 469, 476, 329 N.W.2d 150, 153 (1983); *Correira v. Liu,* 28 Haw. 145, 148 (1924). Or as the Supreme Judicial Court of Massachusetts has put it, the " 'negligent entrustment' [of an automobile] as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle." *Barnstable County Mutual Fire Insurance Co. v. Lally,* 374 Mass. 602, 605–06, 373 N.E.2d 966, 969 (1978).

*Id.* at 340–41, 713 P.2d at 430–31. (footnotes omitted) (some alterations in original and some added). Just as in *Scottsdale Insurance,* the cause of the underlying accident in *HIG* was negligent use of an automobile, such that the automobile exclusion barred

coverage. *See also Fortune v. Wong*, 68 Haw. 1, 12, 702 P.2d 299, 307 (1985) (holding that a homeowner's policy did not provide coverage for the insured's vicarious parental liability where that liability arose from the negligent operation of a motor vehicle by the insured's minor child).

In this case, all of Muramoto's injuries arose from the use of an automobile and all liability faced by OTS and the City stems from that use. Therefore, based on *Scottsdale Insurance, HIG,* and *Fortune v. Wong,* OTS and the City are not entitled to indemnification. Similarly, Northfield owed no duty to defend OTS or the City. Although the duty to defend is broader than the duty to indemnify, *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.,* 76 Hawai'i 277, 287, 875 P.2d 894, 904 (1994), Muramoto's complaint alleges that his injuries arose from the use of an automobile; the complaint does not even mention the driver's unbuckling of Muramoto's wheelchair belt, but rather alleges that Muramoto's wheelchair moved and tipped while on route to the dialysis appointment and that Muramoto was injured as a result. Because the allegations contained in the complaint do not even raise the possibility of coverage, Northfield owed no duty to defend.

### IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's March 18, 2003 first amended judgment.

