NO. 29136

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

FINANCIAL PARTNERS, LTD., Plaintiff/Counterclaim
Defendant-Appellee,
v.
KYOUEI, LLC, Defendant/Counterclaimant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL CASE NO. 1RC07-1-2270)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Leonard, JJ.)

Defendant/Counterclaimant-Appellant Kyouei, LLC
(Kyouei) appeals from the Judgment filed on April 3, 2008 in the
District Court of the First Circuit, Honolulu Division[1] (district
court). The district court entered judgment in favor of
Plaintiff/Counterclaim Defendant-Appellee Financial Partners,
Ltd. (FP) and against Kyouei pursuant to the April 3, 2008 "Order
Granting [FP's] Motion for Summary Judgment on [Kyouei's]
Counterclaim and for Release of Moneys Deposited into Rent Trust
Fund" (Order Granting SJ Motion).

On appeal, Kyouei argues that the district court's
decision ignored "numerous genuine and triable issues" of
fact; ignored FP's material breach of the contract; and "failed
to interpret the terms of the contract according to their plain,
ordinary, and accepted sense in common speech."

I.   BACKGROUND

On or about March 21, 1994, FP entered into a Master
Lease (the Lease) with Tosei Shoji, Ltd. for premises located at
1429 Makaloa Street in Honolulu, Hawai'i (Premises). The Lease
was extended until November 2007. The Lease required consent
from the landlord of the Lease for assignment and sublease.
Tosei Shoji, Ltd., the landlord of the Lease, subsequently

---

[1]  The Honorable Christopher P. McKenzie presided.

assigned its interest in the Lease to Alexander & Baldwin, Inc. (Landlord).

FP operated a cocktail lounge, Club Tsunami, on the Premises and owned a liquor license issued by the Honolulu Liquor Commission (HLC). On January 10, 2006, FP entered into a Services Agreement with Kyouei, whereby Kyouei, as manager, would operate Club Tsunami for FP, beginning on April 1, 2006. On September 21, 2006, FP and Kyouei entered into a superceding Sublease and License Agreement (Sublease), which was effective as of June 1, 2006. The Sublease permitted Kyouei to operate a cocktail lounge known as Gion on the Premises with an option to purchase FP's assets, including FP's rights under the liquor license. The Sublease authorized Kyouei to use FP's liquor license for a license fee:

> a. <u>License Fee</u>. Kyouei shall pay [FP] a license fee of FIFTY FIVE THOUSAND DOLLARS ($55,000.00). [FP] acknowledges a payment of $10,000.00 from Kyouei. The balance of $45,000.00 shall be paid to [FP] upon the execution of this Agreement, the consent of the landlord of the sublease [sic]. If the [HLC] does not allow the license agreement and does not allow Kyouei to use [FP's] liquor license and Kyouei is not at fault, then Kyouei shall be entitled to the return of the FORTY-FIVE THOUSAND DOLLARS ($45,000.00). The initial $10,000.00 payment from Kyouei to [FP] is a non-refundable fee.

The Sublease was to expire on November 30, 2007. In January 2007, FP demanded the remaining $45,000.00 license fee from Kyouei, even though FP had failed to obtain the Landlord's consent to the Sublease and HLC's approval for Kyouei's use of FP's liquor license. Kyouei refused to pay the fee on the ground that the Landlord had not consented to the Sublease. On April 16, 2007, FP filed a complaint against Kyouei. On May 1, 2007, Kyouei filed a counterclaim against FP, alleging breach of contract, bad faith, detrimental reliance, and specific performance.

FP and Kyouei agreed to deposit the $45,000.00 license fee into a rent trust fund. FP proposed that the license fee be released if Kyouei "has the benefit of the full term of the Sublease." Kyouei objected to this language. On March 7, 2008, FP moved for summary judgment on Kyouei's counterclaim and for release of the rent trust funds. On March 12, 2008, Kyouei filed

its opposition to FP's motion.  On March 17, 2008 the district court orally ruled that "there are no genuine issues of material fact and that [FP] is entitled to a judgment as a matter of law, finding that [Kyouei] received the benefit of the bargain[, and] . . . . [FP] did everything that [it was] supposed to and . . . [is] entitled to the forty-five thousand dollars.  So I'm granting both motions."

On April 3, 2008, the district court entered the Order Granting SJ Motion and the Judgment.  Kyouei timely appealed.

## II.   STANDARD OF REVIEW

[An appellate] court reviews a trial court's grant of summary judgment de novo.  *Oʻahu Transit Servs., Inc. v. Northfield Ins. Co.*, 107 Hawaiʻi 231, 234, 112 P.3d 717, 720 (2005). The standard for granting a motion for summary judgment is well settled:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, [the appellate court] must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Price v. AIG Hawaiʻi Ins. Co.*, 107 Hawaiʻi 106, 110, 111 P.3d 1, 5 (2005) (original brackets and citation omitted).

Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008).

## III.   DISCUSSION

**A.    THE INTENT OF THE PARTIES IN HOLDING MONEY IN THE RENT TRUST FUND DOES NOT RAISE A MATERIAL ISSUE OF FACT.**

Kyouei contends that an unsettled material issue of fact exists regarding the parties' intent in holding the remaining $45,000 license fee in the rent trust fund.  Kyouei argues that it intended for the trust funds to be dispersed to FP upon satisfaction of conditions in the Sublease governing the payment of the license fee.  Kyouei further argues that FP, by contrast, intended for the funds to be dispersed to itself upon

expiration of the Sublease. Regardless of this difference, we find no material issue of fact.

We note that both parties agreed to stipulate to the establishment of a rent trust fund. We agree with Kyouei's characterization of the release of the rent trust fund as "merely a remedy" in response to FP's motion for summary judgment. Because we deem the rent trust fund to be collateral, we see no materiality in the parties' alleged difference of intent in holding money in the rent trust fund. See Kamaka, 117 Hawai'i at 104, 176 P.3d at 103 ("A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.").

B. **DISAGREEMENT ON INTERPRETATION OF SUBLEASE AND LICENSE AGREEMENT DOES NOT RAISE A MATERIAL ISSUE OF FACT.**

Kyouei contends its disagreement with FP over the interpretation and intent of the Sublease raises a material issue of fact. We disagree. Kyouei summarily states:

> [FP] interprets the language of the Controlling Provision to mean that the $45,000.00 was part of a $55,000.00 license fee paid from [Kyouei] to [FP] for [Kyouei] to use the liquor license held by [FP]. Kyouei contends that the $45,000.00 was payment for [FP's] fulfillment of specific terms that would allow for smooth and efficient operation of business, and allow principal employees to comply with federally mandated immigration laws.

(Record references omitted.) The Sublease made no express provisions for the "smooth and efficient operation of [Kyouei's] business" or compliance with immigration laws. The Sublease expressly excludes all other collateral agreements through a merger clause. Kyouei cites to no authority broadly holding that disagreement over the interpretation of a contract raises a material issue of fact.

C. **THE "BENEFIT OF THE BARGAIN" RAISES A MATERIAL ISSUE OF FACT.**

Kyouei contends it did not receive its bargained for contractual benefit and FP's alleged breach caused Kyouei to

suffer damages. Because FP disputes these allegations, Kyouei contends there are material issues of fact.

Kyouei specifically argues that its bargained for benefits included (1) HLC approval of its use of FP's liquor license and (2) the Landlord's consent to the Sublease. Paragraph 3.a. of the Sublease provides:

> a. <u>License Fee</u>. Kyouei shall pay [FP] a license fee of FIFTY FIVE THOUSAND DOLLARS ($55,000.00). [FP] acknowledges a payment of $10,000.00 from Kyouei. The balance of $45,000.00 shall be paid to [FP] upon the execution of this Agreement, the consent of the landlord of the sublease [sic].

Kyouei further highlights Sublease provision 1.02(i), which makes the Sublease subject to "the ability to use of [sic] the liquor license under the license agreement herein" and grants Kyouei the power to terminate the Sublease "if it cannot use the liquor license." Kyouei argues that this power of termination presupposes a requirement for HLC approval.

Kyouei maintains that because FP did not secure the Landlord's consent to the Sublease, Kyouei was not able to obtain parking for its customers from Pacific Guardian Center. Kyouei further argues that because HLC did not recognize its license agreement, it could not acquire premise liability insurance. Kyouei supports these allegations through Miyuki Ito's Declaration, which states in relevant part:

> 27. Because [FP] did not obtain the Landlord's consent, Kyouei could not obtain parking spaces for its customer[s] from Pacific Guardian Center, like its neighboring tenant, Kai did. This caused problems in bringing customers to Gion, and put it at a competitive disadvantage.

> 28. Furthermore, because Kyouei's license agreement was not recognized, when it attempted to procure premise liability insurance on its own, it was rejected, and the lack of premises liability exposed Kyouei to potentially devastating liability.

FP attempts to discredit this evidence by arguing that it amounts to inadmissible hearsay and therefore cannot serve as a basis for denying summary judgment. Miyuki Ito is a member of Kyouei, Inc., which operates Gion. She states in her declaration that "I make this Declaration based on personal knowledge and am competent to testify to the matters discussed herein." Ito's

statements about the harm to Kyouei's business are based on personal knowledge and are therefore admissible. First Hawaiian Bank v. Weeks, 70 Haw. 392, 396 n.2, 772 P.2d 1187, 1190 n.2 (1989) (noting that "HRCP 56(e) provides in part that [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

Because Kyouei has raised a material issue on an essential element of a claim, the district court erred when it granted FP's motion for summary judgment on that claim. See Kamaka, 117 Hawaiʻi at 104, 176 P.3d at 103 ("A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.")

## IV.  CONCLUSION

The Judgment filed on April 3, 2008 in the District Court of the First Circuit, Honolulu Division, is vacated, and this case is remanded for proceedings consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, April 27, 2010.

On the briefs:

Junsuke Otsuka
David Squeri
(Otsuka & Buffington)
for Defendant/Counterclaimant-
Appellant.

Keith M. Kiuchi
(Kiuchi & Nakamoto)
for Plaintiff/Counterclaim
Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

6