186 P.3d 609

**ALLSTATE INSURANCE COMPANY,**
Plaintiff–Appellee, Cross–
Appellee,

v.

**Pearl PRUETT; Meredith Pruett; and
Ikaika Pruett, a minor, Defendants–
Appellants, Cross–Appellees,**

and

**Charlene Manglicmot, a minor; Michelle
Casil, a minor, Defendants–Appellees,
Cross–Appellees,**

and

**Salvador Pebenito; Board of Water Sup-
ply, City and County of Honolulu,
Defendants–Cross–Appellees,**

and

**Doe 1–10, Defendants.**

**Pearl Pruett, individually and as guardian
of Ikaika Pruett and Meredith Pruett,
Third–Party Plaintiffs–Appellants,
Cross–Appellees,**

v.

**AIG Hawaii Insurance Company, a Ha-
wai'i corporation, Third–Party Defen-
dant–Appellee, Cross–Appellant.**

No. 26830.

Supreme Court of Hawai'i.

June 25, 2008.

Randall Y.S. Chung and Ward F.N. Fujimoto of Matsui Chung Sumida & Tsuchiyama, Honolulu, on the briefs, for third-party defendant-appellee, cross-appellant AIG Hawaii Insurance Company.

Richard B. Miller and Patricia Kehau Wall of Tom Petrus & Miller, LLLC, Honolulu, on the briefs, for plaintiff-appellee, cross-appellee, Allstate Insurance Company.

Stuart N. Fujioka of Nishioka & Fujioka, AAL, ALC, Honolulu, on the briefs, for defendants-appellants, third-party plaintiffs-appellants, cross-appellees Pearl Pruett, Meredith Pruett and Ikaika Pruett, a minor.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ. and ACOBA, J., concurring and dissenting.

Opinion of the Court by NAKAYAMA, J.

Defendants–Appellants, Third–Party Plaintiffs–Appellants, Cross–Appellees, Pearl Pruett, Ikaika Pruett, and Meredith Pruett (collectively, "the Pruetts"), appeal from the Circuit Court of the First Circuit's ("circuit court's") October 18, 2004 final judgment partially in favor of Plaintiff–Appellee, Cross–Appellee, Allstate Insurance Company ("Allstate").[1] On appeal, the Pruetts assert that the circuit court erred when it determined that Allstate was not obligated to defend or indemnify Pearl and Ikaika Pruett under Allstate's homeowner's insurance policy naming Pearl Pruett as the named insured.

Both Allstate and Third–Party Defendant–Appellee, Cross–Appellant, AIG Hawaii Insurance Company ("AIG") (collectively, "the Insurers"), appeal from the circuit court's October 18, 2004 final judgment partially in favor of the Pruetts. On appeal, the Insurers present the following points of error: (1) the circuit court erred when it held that the Pruetts were entitled to coverage under the Insurers' automobile insurance policies; (2) the circuit court erred when it determined that the phrase "any person" as used in the automobile insurance policies was ambiguous; and (3) the circuit court erred when it determined that the Pruetts were entitled to recover costs and attorney's fees against the Insurers.

For the following reasons, we hold that the circuit court: (1) did not err when it determined that liability coverage was afforded to Meredith Pruett and Ikaika Pruett pursuant to the terms of AIG's automobile insurance policy, inasmuch as the manner in which the term "any person" was used in AIG's policy was ambiguous; (2) did not err when it determined that Personal Injury Protection ("PIP") coverage was afforded to Ikaika Pruett pursuant to the terms of Allstate's automobile insurance policy, inasmuch as the manner in which the term "any person" was used in Allstate's policy was ambiguous; (3) erred when it determined that Pearl Pruett and Ikaika Pruett were afforded liability coverage under Allstate's automobile insurance policy because any claim arising from the

automobile accident would not arise out of the use of an "insured auto"; (4) abused its discretion in awarding costs and attorney's fees to the Pruetts because the circuit court did not order the Insurers to "pay benefits"; and (5) did not err when it determined that the Pruetts were excluded from coverage under the terms of Allstate's homeowner's insurance policy. Accordingly, we affirm in part and reverse in part the circuit court's October 18, 2004 final judgment.

## I. BACKGROUND

### A. Factual Background

Pearl Pruett is the biological grandmother and adoptive mother of Ikaika Pruett, who is a minor. Meredith Pruett is Pearl's biological daughter, Ikaika's biological aunt, as well as Ikaika's sister as a result of the adoption. Pearl, Meredith, and Ikaika all reside together.

On February 8, 2002, Ikaika was involved in an automobile accident while operating a vehicle owned by Meredith. Ikaika did not have a driver's license at the time of the accident. He also did not have a reasonable belief that he was entitled to operate the vehicle, and had neither Meredith's nor Pearl's permission to use or operate the vehicle.

According to the circuit court's undisputed findings of fact, Charlene Manglicmot, Michelle Casil and others may claim to suffer injuries from the accident. Additionally, Salvador PeBenito and the Board of Water Supply of the City and County of Honolulu and others have claimed or may claim property damage from the accident.

Meredith was listed as the named insured on an AIG automobile insurance policy, which was in effect on the day of the accident. Pearl was listed as the named insured on an Allstate automobile insurance policy and an Allstate homeowner's insurance policy, both of which were in effect on the day of the accident.

---

1. The Honorable Victoria S. Marks presided.

### B. Procedural Background

On June 10, 2002, Allstate filed a complaint in circuit court seeking, *inter alia,* a judicial declaration that it did not owe duties to defend or indemnify the Pruetts under its automobile insurance policy for any claims or injuries arising out of the automobile accident. Allstate also sought a declaration that it was not required to provide PIP coverage to, *inter alia,* Ikaika Pruett.

On July 8, 2002, the Pruetts filed a counterclaim against Allstate, as well as a third party complaint against AIG. In their counterclaim, the Pruetts alleged that Allstate owed duties to defend and indemnify under both its automobile and homeowner's insurance policies. The Pruetts claimed that coverage was owed under the homeowner's policy because the Pruetts "expect property damage and personal injury claims to be asserted against them ... based on allegations including but not limited to negligent entrustment and negligent supervision of a minor." In its third party complaint, the Pruetts asserted that AIG owed them duties to defend and indemnify under AIG's automobile insurance policy issued to Meredith.

On November 7, 2002, AIG moved for summary judgment on the Pruett's third party complaint. On November 25, 2002, Allstate moved for summary judgment on its complaint and on the Pruett's counterclaim. On December 17, 2002, the Pruetts filed a cross-motion for summary judgment against Allstate and AIG.

On March 4, 2003, the circuit court filed its findings of fact, conclusions of law and order granting in part the Pruetts' cross-motion for summary judgment against Allstate and AIG. The circuit court also denied in part Allstate's motion for summary judgment, and denied AIG's motion for summary judgment. Therein, the circuit court ruled that the exclusions from coverage enumerated in both AIG's and Allstate's insurance policies did not apply to the Pruetts because the phrase "any person" as used in the policies was ambiguous. Accordingly, the circuit court determined that the Pruetts were entitled to coverage under the Insurers' auto policies for personal injury and property damage claims. For the same reason, the circuit court also determined that Ikaika Pruett was entitled to personal injury protection coverage through Allstate's auto insurance policy.

On June 28, 2004, Allstate filed a motion for partial summary judgment as to its duty to defend on a claim alleging negligent parenting by the Pruetts. On September 7, 2004, the circuit court granted Allstate's motion for partial summary judgment. In its order, the circuit court concluded that Allstate was not obligated, pursuant to the terms of its homeowner's insurance policy, to defend or indemnify any of the Pruetts for any claim to recover for injuries arising from the automobile accident, which included claims for negligent parenting.

On September 8, 2004, the circuit court granted the Pruetts' request for an award of costs and attorney's fees. This award was based on the Pruetts' prevailing on the issue of coverage under AIG's and Allstate's automobile insurance policies, and not under Allstate's homeowner's insurance policy.

The circuit court's final judgment was filed on October 18, 2004. Notices of appeal were timely filed by the Pruetts on October 22, 2004, AIG on November 15, 2004, and Allstate on November 16, 2004.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

On appeal, the grant or denial of summary judgment is reviewed *de novo.* *See State ex. rel. Anzai v. City and County of Honolulu,* 99 Hawai'i 508, 514, 57 P.3d 433, 439 (2002); *Bitney v. Honolulu Police Dep't,* 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In oth-

er words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Kahale v. City and County of Honolulu,* 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

## B. Interpretation of Insurance Policies

Regarding interpretation of insurance policies, this court has stated:

> [I]nsurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy. As such, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended. Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.

> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Dairy Rd. Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 411–12, 992 P.2d 93, 106–07 (2000) (citations, quotation marks, and brackets omitted).

## C. Attorney's Fees and Costs

■ This court reviews the circuit court's denial and granting of attorney's fees under the abuse of discretion standard. *Eastman v. McGowan,* 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (citation omitted); *Coll v. McCarthy,* 72 Haw. 20, 28, 804 P.2d 881, 887 (1991). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Lepere v. United Public Workers,* 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995) (citation, internal quotation marks, and brackets omitted). Stated differently, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State ex rel. Bronster v. United States Steel Corp.,* 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996).

*TSA Int'l Ltd. v. Shimizu Corp.,* 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999) (some citations omitted); *see Ranger Ins. Co. v. Hinshaw,* 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003) (same).

## III. DISCUSSION

### A. The Circuit Court Did Not Err When It Determined That the Term "Any Person" Was Ambiguous As Used In the Insurers' Automobile Policies.

The Insurers maintain that the circuit court erred when it determined that the term "any person" was ambiguous as used in their respective automobile insurance policies. In so maintaining, the Insurers urge this court to construe the term "any person" as unambiguously including family members of the named insured.

1. *Selective use of the term "any person" within AIG's auto insurance policy creates an ambiguity that must be resolved against it.*

■ AIG's insurance policy defines an "Insured" as follows:

Part A—Liability Coverage

A. We will pay compensatory damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident.

B. Insured as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto or trailer.

2. Any person using your covered auto with your permission.

3. For your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or trailer, other than your covered auto, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part.

Contained within this same "Part" is the following pertinent exclusion ("Exclusion No. 8") from coverage enumerated in AIG's insurance policy: "We do not provide Liability Coverage for any person: ... 8. Using a vehicle without a reasonable belief that that person is entitled to do so."

The terms "you" and "your" are defined in the "Definitions" section of AIG's insurance policy as "[t]he 'named insured' shown in the Declarations; and ... [t]he spouse if a resident of the same household." The term "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household, or such person while temporarily living elsewhere. This includes a ward or foster child[.]" [2] The term "any person" is not defined in the policy.

As set forth above, the Insurers urge this court to construe the term "any person" as used in the exclusions section of their insurance policies as unambiguously including family members of the named insured. To support their argument, they point to a majority of jurisdictions which have held accordingly. *See, e.g., Hartford Ins. Co. of the Midwest v. Halt*, 223 A.D.2d 204, 212, 646 N.Y.S.2d 589, 594 (1996) (overruling *Paychex, Inc. v. Covenant Ins. Co.*, 156 A.D.2d 936, 549 N.Y.S.2d 237 (N.Y.App.Div.1989) because "the majority of courts that have addressed the issue is correct and that the countervailing view is unreasonable and unjust"); [3] *Close v. Ebertz*, 583 N.W.2d 794

2. It is undisputed that Meredith Pruett is the named insured. It is also undisputed that Ikaika Pruett satisfies the policy's definition of a "family member," inasmuch as he is related to Meredith "by blood" and "adoption," and both of them reside in the same household.

3. As explained by the New York court,

The vast majority of courts considering the issue ... [hold] that the policy unambiguously excludes coverage for anyone, including a "family member", who uses the vehicle without permission (*see, Newell v. Nationwide Mut. Ins. Co.*, 334 N.C. 391, 432 S.E.2d 284; *Allied Group Ins. Co. v. Allstate Ins. Co.*, 123 Idaho 733, 852 P.2d 485; *Estate of Ge Yang v. General Cas. Co.*, 185 Wis.2d 919, 520 N.W.2d 291 [unpublished decision-text at 1994 WL 269281], *review denied* 524 N.W.2d 142; *Harlan v. Valley Ins. Co.*, 128 Or.App. 128, 875 P.2d 471, *review denied* 319 Or. 407, 879 P.2d 1285; *Cincinnati Ins. Co. v. Plummer*, 213 Ga. App. 265, 444 S.E.2d 378; *Hanover Ins. Co. v. Locke*, 35 Mass.App.Ct. 679, 624 N.E.2d 615; *Kelly v. Threshermen's Mut. Ins. Co.*, 176 Wis.2d 513, 502 N.W.2d 618 [unpublished decision-text at 1993 WL 98770]; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 866 S.W.2d 539 [Tenn.App.]; *State Farm Mut. Auto. Ins. Co. v. Casualty Reciprocal Exch.*, 600 So.2d 106 [La. App.]; *Omni Ins. Co. v. Harps*, 196 Ga.App. 340, 396 S.E.2d 66; *St. Paul Ins. Co. v. Rutgers Cas. Ins. Co.*, 232 N.J.Super. 582, 557 A.2d 1052; *General Acc. Fire & Life Assur. Corp. v. Perry*, 75 Md.App. 503, 541 A.2d 1340, *cert denied* 313 Md. 612, 547 A.2d 189; *Georgia Farm Bur. Mut. Ins. Co. v. Fire & Cas. Ins. Co. of Conn.*, 180 Ga.App. 777, 350 S.E.2d 325; *State Farm Mut. Auto. Ins. Co. v. Kelly*, 132 Wis.2d 187, 389 N.W.2d 838, *review denied* 132 Wis.2d 485, 393 N.W.2d 545; *see also, Driskill v. American Family Ins. Co.*, 698 F.Supp. 789 [E.D.Mo.] [applying Missouri law]; *cf., Donegal Mut. Ins. Co. v. Eyler*, 360 Pa.Super. 89, 519 A.2d 1005; *Wallen v. Acosta*, 799 F.Supp. 83, 85, n. 1 [D.Kan.] [applying Kansas law] ). The foregoing cases hold that, because the term "any person" is unambiguous and has no technical or otherwise restricted definition in the policy itself, it should be accorded its common meaning (*see, Newell v. Nationwide Mut. Ins. Co.*, supra, 334 N.C., at 401, 432 S.E.2d, at 290; *Cincinnati Ins. Co. v. Plummer*, supra, 213 Ga.App., at 265–266, 444 S.E.2d, at 380; *State Farm Mut. Auto. Ins. Co. v. Casualty Reciprocal Exch.*, supra, at 108; *St. Paul Ins. Co. v. Rutgers Cas. Ins. Co.*, supra, 232 N.J.Super., at 586, 557 A.2d, at 1054). As a result, those cases hold that "any person" means exactly that, necessarily including any "family member" or even the named insured (*see, Newell v. Nationwide Mut. Ins. Co.*, supra, 334 N.C., at 401, 432 S.E.2d, at 290; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, supra, at 541; *State Farm Mut. Auto. Ins. Co. v. Casualty Reciprocal*

(N.D.1998) ("The majority of courts[ ] ... have concluded the 'any person' language unambiguously includes a 'family member[.]' ").

However, notwithstanding what these jurisdictions have held, this court has agreed that the term "any person" may be ambiguous when construed within the context of the terms of the insurance policy itself. *See AIG Hawai'i Ins. Co. v. Smith*, 78 Hawai'i 174, 182–83, 891 P.2d 261, 269–70 (1995) (agreeing with *Econ. Fire & Cas. Co. v. Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d 504 (1986)). In *Smith*, we observed that the "appellants' construction of clause four runs counter to the *selective use* of" the terms "any person" and "family member" "in defining the scope of coverage in the policy." [4] *Id.* at 182, 891 P.2d at 269 (emphasis added).

As stated by the *Kubik* court, by itself, the term "any person," "encompass[es] every possible individual including the insured and his family members." *Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d at 507.

> However, while the terms "family member" and "any person" have a clear meaning when standing alone, that meaning can become, as in the instant case, ambiguous through the manner in which those terms are used throughout the policy. In this regard, we note that the terms "family member" and "any person" are used selectively throughout the policy's exclusions in such a way as to create the impression that they refer to *mutually exclusive* classes.

*Id.* (emphasis in original).

This court agreed with the *Kubik* court's reasoning and concluded that "the selective use of the terms 'any person' and 'family member' in clause four of AIG's policy cre-

ates mutually exclusive classes[.]" *Smith*, 78 Hawai'i at 183, 891 P.2d at 270. Accordingly, a person could not "claim entitlement to coverage ... by asserting that he is both 'any person' and a 'family member.' " *Id.*

Allstate asserts that *Smith* is distinguishable from the instant case, insofar as "there is no Hawai'i case law construing the term 'any person' as used in" the exclusions to coverage section of an automobile insurance policy. Allstate points out that *Smith* construed the term "any person" as it was used to define the term "covered person" · in the insurance policy in that case, and not as used in the exclusions to coverage section in this case. Additionally, the Insurers assert that the majority view is consistent with Hawaii's rules governing insurance contract interpretation.

However, Allstate overlooks that the *Kubik* court interpreted a clause that excluded coverage "[f]or any person using a vehicle without a reasonable belief that the person is entitled to do so." 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d at 506. The exclusion at issue in *Kubik* is virtually identical to Exclusion No. 8 in AIG's automobile insurance policy, as quoted *supra*. To reiterate, this court in *Smith* agreed with the *Kubik* court's analysis and construed the term "any person" as it was used to define the term· "covered person" in the insurance policy in that case. *See Smith*, 78 Hawai'i at 180, 182–83, 891 P.2d at 267, 269–70. Because we applied the *Kubik* court's analysis to the policy language at issue in *Smith*, and the interpretation of "any person" as used in an exclusion was at issue in *Kubik*, it is logical to apply the same analysis to the exclusions

---

*Exch., supra*, at 108; *Omni Ins. Co. v. Harps, supra*, 196 Ga.App., at 341–342, 396 S.E.2d, at 68). The cases reason that no ambiguity is created merely because one part of the policy establishes general coverage, whereas the other part establishes specific exclusions (*see, Omaha Prop. & Cas. Ins. Co. v. Johnson, supra*, at 541; *General Acc. Fire & Life Assur. Corp. v. Perry, supra*, 75 Md.App., at 509, 541 A.2d, at 1342; *see also, Driskill v. American Family Ins. Co., supra*, at 793).

*Hartford Ins. Co. of the Midwest*, 646 N.Y.S.2d at 592–93, 223 A.D.2d at 209–10 (alterations added and in original).

4. Clause four of the insurance policy at issue in *Smith* stated, as follows:

> "Covered person" as used in this Part means:
> ....
> 4. For any auto or trailer, other than your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or trailer.

*Id.* at 180, 891 P.2d at 267 (bold in original).

in this case.[5]

The Insurers correctly point out that this court has long held that "the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Dairy Rd. Partners*, 92 Hawai'i at 411, 992 P.2d at 106. Additionally, "[a] court must 'respect the plain terms of the policy and not create ambiguity where none exists.'" *Smith v. New England Mut. Life Ins. Co.*, 72 Haw. 531, 537, 827 P.2d 635, 638 (1992) (quoting *First Ins. Co. of Hawaii, Inc. v. State ex rel. Minami*, 66 Haw. 413, 423–24, 665 P.2d 648, 655 (1983)).

However, we have also said that "because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Dairy Rd. Partners*, 92 Hawai'i at 411–12, 992 P.2d at 106–07 (brackets, block format, quotation marks, and citation omitted). In other words, "the rule is that policies are to be construed in accord with the reasonable expectations of a layperson." *Id.* at 412, 992 P.2d at 107 (block format, quotation marks, and citation omitted). In light of this court's long held principles in construing the terms of an insurance policy, the Insurers' argument that these terms cannot become ambiguous through the manner in which they are used is unpersuasive.[6]

As noted *supra*, the term "any person" is not defined in AIG's policy. Accordingly, standing by itself, this term "should be interpreted according to [its]

plain, ordinary, and accepted sense in common speech...." *Dairy Rd. Partners*, 92 Hawai'i at 411, 992 P.2d at 106 (quotation marks, block format, and citation omitted). However, this court need not do so if "it appears from the policy that a different meaning is intended." *Id.* (quotation marks, block format, and citation omitted). Indeed, our analysis of the terms of an automobile insurance policy is not confined to either a single clause or term in isolation from the rest of the policy. *See id.* ("[E]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." (Quotation marks, citations, and some brackets omitted.)).

In this case, we read AIG's policy as classifying an "Insured" in one of several possible ways: (1) "You" or, as defined, "[t]he 'named insured' shown in the Declarations; and ... [t]he spouse if a resident of the same household[,]" "for the ownership, maintenance or use of any auto or trailer"; (2) "any family member for the ownership, maintenance or use of any auto or trailer"; (3) "any person" either "using your covered auto with your permission[ ]" or "[f]or your covered auto, ... only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part"; or (4) "[f]or any auto or trailer, other than your covered auto, any other person ... but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part." It is undisputed that Ikaika Pruett qualifies as "any family member" as defined in AIG's policy.

The foregoing categories of an "Insured" appear to be preserved in the exclusions

---

5. AIG contends that *Retherford v. Kama*, 52 Haw. 91, 470 P.2d 517 (1970), construed the term "any person" "as all-encompassing in determining whether or not a particular claimant qualified as 'any person' sustaining bodily injury under a business general liability policy." However, AIG's reliance on *Retherford* is misplaced, inasmuch as this court's decision focused primarily on construing the term "with respect to" as used in the insurance policy at issue in that case, and not the term "any person." *See generally Retherford*, 52 Haw. 91, 470 P.2d 517.

6. Moreover, it should be noted that the *Kubik* court's framework for analysis is similar to the manner in which this court analyzes the terms of an insurance policy. The *Kubik* court recognized that "the terms 'family member' and 'any person' have, standing by themselves, a clear and unambiguous meaning." 142 Ill.App.3d 906, 97 Ill. Dec. 68, 492 N.E.2d at 507. However, it further recognized that the "meaning" of these terms "can become[ ] ... ambiguous through the manner in which those terms are used throughout the policy." *Id.*

from coverage section of AIG's insurance policy. For example, AIG's policy states that

[w]e do not provide Liability Coverage for *any person:* ... (2) For damage to property owned or being transported by *that person*[;] ... (8) Using a vehicle without a reasonable belief that *that person* is entitled to do so[;] ... [and] (10) For any liability assumed by *you or any family member* under any contract.

(Emphases added.) In light of the manner in which these exclusions are used, we believe that "the reasonable expectations of a layperson" would construe the phrase "that person" to refer to the term "any person," and the terms "you or any family member" to be mutually exclusive to the classification of "any person." *See Dairy Rd. Partners,* 92 Hawai'i at 412, 992 P.2d at 107 ("[T]he rule is that policies are to be construed in accord with the reasonable expectations of a layperson." (Block format, quotation marks, and citation omitted.)); *see also Smith,* 78 Hawai'i at 182–83, 891 P.2d at 269–70. Construing the term "any person" as used in the exclusion section "liberally in favor of the insured[,]" and in light of the multiple classifications created by the definition of an "Insured," the term "any person" is ambiguous and its meaning "must be resolved against the insurer." *Dairy Rd. Partners,* 92 Hawai'i at 412, 992 P.2d at 107 (brackets omitted). Accordingly, mutually exclusive classes were created from AIG's selective use of the terms "you," "any family member," and "any person." *See Smith,* 78 Hawai'i at 182–83, 891 P.2d at 269–70. Inasmuch as Ikaika Pruett cannot qualify both under the distinct classes of "any person" and "any family member," we hold that the circuit court did not err when it determined that AIG's Exclusion No. 8 did not apply to Ikaika.

> 2. *Selective use of the term "any person" within Allstate's auto insurance policy creates an ambiguity that must be resolved against it.*

■■ Allstate asserts that the circuit court erred when it determined that the term "any person" as used in its exclusions to PIP coverage section of its automobile insurance policy was ambiguous. Specifically, Allstate points to the following exclusions that operate to exclude PIP coverage to Ikaika Pruett:

[PIP] coverage does not apply to bodily injury, sickness, disease or death[ ] ... to any person while committing an act punishable by imprisonment for more than one year[,] ... [and] to any person while operating or using a motor vehicle without a good faith belief that such person is legally entitled to do so.

The circuit court, however, concluded that an ambiguity existed between the policy's definition of an "insured person" and the exclusions to PIP coverage quoted above.

Black's Law Dictionary defines a "person" simply as "[a] human being." *Black's Law Dictionary* 1178 (8th ed.2004). Standing by itself, it would thus be reasonable for a layperson to expect that the term "any person" to mean "any human being." *See id.; see also Dairy Rd. Partners,* 92 Hawai'i at 412, 992 P.2d at 107 ("[T]he rule is that policies are to be construed in accord with the reasonable expectations of a layperson." (Block format, quotation marks, and citation omitted.)); *id.* at 411, 992 P.2d at 106 ("[T]he terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended."). As the *Kubik* court observed, the term "any person, ... standing by itself, ... encompass[es] every possible individual including the insured and his family members." 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d at 507.

However, to reiterate, "while the terms 'family member' and 'any person' have a clear meaning when standing alone, that meaning can become[ ] ... ambiguous *through the manner in which* those terms are used throughout the policy." *Id.* (emphasis added). In this regard, when these terms "are used selectively throughout the policy's exclusions in such a way as to create the impression that they refer to mutually exclusive classes[,]" an ambiguity results, *id.,* which "must be resolved against the insurer[,]" *Dairy Rd. Partners,* 92 Hawai'i at 412, 992 P.2d at 107 (block format, brackets, and citation omitted).

Liability coverage is provided by Allstate's auto insurance policy, in pertinent part, as follows: "Allstate will pay for all damages an *insured person* is legally obligated to pay[ ] because of[ ] ... bodily injury sustained by *any person*[.]" (Emphases added.) An "insured person" is defined as, *inter alia*, either "you" or "any resident relative." "You" is defined as "the policyholder named on the declarations page and that policyholder's resident spouse." "Resident" is defined as "the physical presence in your household with the intention to continue living there." The term "any person" is undefined.

Accordingly, the foregoing quoted sentence can be interpreted in the following manner: "Allstate will pay for all damages ["the policyholder named on the declarations page and that policyholder's resident spouse[,]"] and "any resident relative"] is legally obligated to pay[ ] because of[ ] ... bodily injury sustained by any person[.]" As discussed *supra*, this sentence appears to explain Allstate's duty to indemnify an "insured person" from "damages" that an "insured person is legally obligated to pay...." Pursuant to the foregoing language, it simply does not make sense for an "insured person" to seek indemnification for bodily injuries incurred on himself if a layperson were to construe the term "any person" to mean "any human being." Therefore, in this context, it would be unreasonable to expect a layperson to construe the term "any person" to mean "any human being," inasmuch as the manner in which the term is used above clearly cannot include an "insured person." *See Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d at 507; *see also Dairy Rd. Partners*, 92 Hawai'i at 411, 992 P.2d at 106. Accordingly, Allstate's use of the terms "any person" and "insured person" in its liability coverage section is ambiguous because its selective use of these terms creates "mutually exclusive classes" contrary to the meaning of the term "any person" in its "plain, ordinary, and accepted sense in common speech...." *See Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d at 507; *see also Dairy Rd. Partners*, 92 Hawai'i at 411, 992 P.2d at 106.

In this case, an insured must seek compensation from Allstate for his own bodily injuries through any PIP coverage he may have. PIP coverage is provided by Allstate's insurance policy, as follows: "Allstate will pay to or on behalf of the injured person the following benefits in accordance with Hawaii no-fault law." According to its policy, "[p]ayments will be made only when bodily injury, sickness, disease or death is caused by an accident arising out of the operation, maintenance, or use of a motor vehicle as a motor vehicle." Allstate's auto policy defines an "injured person" in pertinent part, as follows:

a) you or a resident relative who sustains bodily injury, sickness, disease, or death:

(i) arising out of the operation, maintenance or use of any motor vehicle as a motor vehicle[.]

. . . .

b) any other person who sustains bodily injury, sickness disease or death:

(i) arising out of the operation, maintenance or use of the insured motor vehicle or a temporary loaner vehicle[.]

In the PIP coverage section of Allstate's auto policy, the terms "you" and "your" are defined as "the policyholder named on the declarations page." The term "resident relative" is defined as "any person related to you and residing in your household[,]" and "any minor residing in your household who is ... in your custody[ ] or ... in the custody of any relative who resides in your household." The terms "any person" and "any other person" are not defined by the policy.

There are thirteen exclusions to PIP coverage included in Allstate's automobile policy. Nine of these exclusions refer to the undefined term of "any person," and do not refer to the terms "insured person," "you," or "resident relative." For example, PIP exclusion numbers 1, 2, 3, 4, 7, and 10 state, as follows:

This coverage does not apply to bodily injury, sickness, disease or death:

1. to you or any resident relative while occupying a motor vehicle owned by you which is not an insured motor vehicle.

2. to a resident relative while occupying a motor vehicle owned by that person

and for which the security required by the Hawaii no-fault law is not in effect.

3. to a resident relative who is a named insured under any other contract providing the security required by the Hawaii no-fault law.

4. to any person while committing an act punishable by imprisonment for more than one year.

. . . .

7. to any person while operating or using a motor vehicle without a good faith belief that such person is legally entitled to do so.

. . . .

10. to any person, other than you or a resident relative, while occupying any motor vehicle outside the State of Hawaii. . . .

Allstate contends that PIP exclusion number 10 demonstrates that the term "resident relative" is included within the broader term of "any person." However, Allstate overlooks that our analysis of the terms of an automobile insurance policy is not confined to either a single clause or term in isolation from the rest of the policy. *See Dairy Rd. Partners*, 92 Hawaiʻi at 411, 992 P.2d at 106 ("[E]very insurance contract shall be construed according to the *entirety* of its terms and conditions as set forth in the policy." (Emphasis added and quotation marks, citations, and some brackets omitted.)).

As discussed above, the liability coverage section of Allstate's policy creates mutually exclusive classes through its selective use of the terms "any person" and "insured person." *See Kubik*, 142 Ill.App.3d 906, 97 Ill. Dec. 68, 492 N.E.2d at 507. Moreover, the term "any person" is undefined throughout both the liability and PIP coverage sections of Allstate's auto policy. Because it would be unreasonable for a layperson to construe the term "any person" to mean "any human being" as that term is used in Allstate's liability coverage section, and Allstate essentially argues that the term "any person" should be construed to mean "any human being" in its PIP coverage section, the term "any person" is ambiguous as used throughout Allstate's policy and its meaning must therefore be resolved against the insurer. *See Dairy Rd.*

*Partners*, 92 Hawaiʻi at 412, 992 P.2d at 107. Accordingly, we hold that the circuit court did not err when it determined that Allstate's exclusions to PIP coverage did not apply to Ikaika Pruett, inasmuch as he is a part of the "resident relative" class of an "insured person," and not the "any person" class as created by the selective use of those terms in Allstate's auto policy.

**B. The Circuit Court Erred When It Determined That Liability Coverage Was Afforded To Pearl and Ikaika Pruett Pursuant To the Terms Of Allstate's Automobile Insurance Policy.**

 Allstate asserts that Pearl and Ikaika Pruett are not entitled to liability coverage because Meredith's vehicle does not qualify as an "Insured Auto" as defined in its automobile insurance policy. Liability coverage is provided by Allstate's auto insurance policy, as follows:

Allstate will pay for all damages an insured person is legally obligated to pay— because of:

1. bodily injury sustained by any person, and

2. damage to or destruction of property, including loss of use.

Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an *insured auto*.

We will defend an insured person sued as the result of an auto accident, even if the suit is groundless or false. We will choose the counsel. We may settle any claim or suit if we believe it is proper.

(Emphasis added.)

Allstate's policy defines an "insured person" in the following ways:

Insured Persons

1. While using your insured auto:
 a) you,
 b) any resident, and
 c) any other person using it with your permission.

2. While using a non-owned auto:
 a) you,

b) any resident relative using a four wheel private passenger auto or utility auto.

3. Any other person or organization liable for the use of an insured auto if the auto is not owned or hired by this person or organization, provided the use is by an insured person under either of the two preceding paragraphs.

The policy defines an "insured auto" as including, *inter alia,* "[a] non-owned auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person." ·

Meredith's vehicle, which was a 1990 Toyota Corolla, was listed on AIG's auto insurance policy naming Meredith as the named insured. It is undisputed that Ikaika did not have permission to operate Meredith's vehicle on the day of the accident. Additionally, it is undisputed that Meredith's car is not listed as an "insured auto" under Allstate's auto insurance policy. Thus, notwithstanding that Ikaika Pruett qualifies as an "insured person" under Allstate's policy, inasmuch as he is a "resident relative" who used a "non-owned auto" or a "four wheel private passenger auto or utility auto," Allstate's auto insurance policy "protects" neither Pearl Pruett nor Ikaika Pruett as "insured persons" because any "claim[ ]" arising from the February 8, 2002 accident would not "aris[e] out of the ... use[ ] ... of an insured auto." *See Dairy Rd. Partners,* 92 Hawai'i at 411, 992 P.2d at 106 ("[T]he terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended."). Accordingly, we hold that the circuit court erred in its determination that Pearl Pruett and Ikaika Pruett were afforded liability coverage pursuant to the terms of Allstate's automobile insurance policy.

## C. The Circuit Court Abused Its Discretion When It Awarded Costs and Attorney's Fees To the Pruetts.

Hawai'i Revised Statutes (HRS) § 431:10–242 (2005) provides, in its entirety:

Where an insurer has contested its liability under a policy and is ordered by the courts to *pay benefits* under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be awarded reasonable attorney's fees and costs of suit, in addition to the benefits under the policy.

(Emphasis added.)

■ The circuit court's order granting costs and attorney's fees to the Pruetts states that the award was made based on the Pruetts "prevail[ing] on the issue of coverage under the automobile insurance policies as to Allstate and AIG ... in accordance with [HRS § 431:10–242][.]" AIG contends that the circuit court erred when it awarded costs and attorney's fees to the Pruetts because it was not ordered to "pay benefits" under its policy for purposes of HRS § 431:10–242.

In *Mikelson v. United Servs. Auto. Ass'n,* 108 Hawai'i 358, 360, 120 P.3d 257, 259 (2005), this court acknowledged that the "fundamental question with respect to the issue of awarding ['attorney's fees and the costs of suit'] is whether [the insurer] has in fact been ordered to pay benefits within the meaning of HRS § 431:10–242." (Brackets added.) In *Mikelson,* this court denied the insured's request for attorney's fees because the trial court ordered the insurer to provide "[underinsured motorist ("UIM") ] coverage" and not "UIM benefits," the latter of which would be sufficient to satisfy "the plain and obvious meaning" of the phrase "pay benefits" as used within HRS § 431:10–242. 108 Hawai'i at 360–61, 120 P.3d at 259–60.

Similarly, in *Ranger Insurance Co. v. Hinshaw,* 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003), multiple complaints for declaratory relief were dismissed with prejudice. This court held that HRS § 431:10–242 was inapplicable because the insurer was not ordered to pay any benefits under its policy. *Id.* at 34, 79 P.3d at 127.

In this case, the circuit court ordered that the exclusions in both Allstate's and AIG's automobile insurance policies were inapplicable to the Pruetts, "and coverage is afforded under [AIG's automobile insurance policy] and [Allstate's automobile insurance policy][.]

... In addition, [PIP] coverage is afforded to Ikaika Pruett under the Allstate Auto Policy arising from the February 8, 2002 accident." Because the circuit court did not order the Insurers to "pay benefits," as mandated by the plain language of HRS § 431:10–242, HRS § 431:10–242 does not apply to this case. *See Mikelson,* 108 Hawai'i at 360–61, 120 P.3d at 259–60; *see also Ranger Ins. Co.,* 103 Hawai'i at 34, 79 P.3d at 127. Accordingly, we hold that the circuit court abused its discretion when it awarded costs and attorney's fees to the Pruetts pursuant to HRS § 431:10–242. *See TSA Int'l Ltd.,* 92 Hawai'i at 253, 990 P.2d at 723 ("This court reviews the circuit court's denial and granting of attorney's fees under the abuse of discretion standard.... 'The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on clearly erroneous assessment of the evidence.'" (Citations omitted.)).

**D. The Circuit Court Did Not Err When It Determined That the Pruetts Were Excluded From Coverage From Allstate's Homeowner's Insurance Policy.**

■ "Coverage X" under Allstate's homeowner's insurance policy states that "[s]ubject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy."[7] Exclusion number 5 under "Coverage X" ("Exclusion No. 5") states: "Losses We Do Not Cover Under Coverage X: ... 5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." (Italics and bold omitted.)

The Pruetts contend that Exclusion No. 5 does not apply in this case because "Ikaika's taking of the keys and vehicle, without license or permission, is causally related to the anticipated injury claims[ ]" and, therefore, Ikaika's act "do[es] not fall under his ownership, maintenance, use, occupancy, renting, etc. of a motor vehicle." In other words, the Pruetts allege that "negligent parental supervision"[8] is a separate claim that is not excluded by the terms of Exclusion No. 5. Accordingly, the Pruetts contend that liability coverage should be afforded to both Pearl Pruett and Ikaika Pruett through the terms of Allstate's homeowner's policy.[9]

In support of their claim, the Pruetts rely on *McDonald v. Home Insurance Co.,* 97 N.J.Super. 501, 235 A.2d 480 (1967), and *Worcester Mutual Insurance Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986). Both of these cases hold that "negligent parental supervision" is a claim that is "separate and distinct from the use or operation of an automobile." *Worcester Mut. Ins. Co.,* 398 Mass. 240, 496 N.E.2d at 161 (noting, however, that "without the severability provision" in the insurance policy, "a literal reading of the motor vehicle exclusion by itself precludes the [the parents] from coverage under the policy because [their son], an insured, owned and operated the motor vehicle involved in the fatal accident"); *see McDonald,* 97 N.J.Super. 501, 235 A.2d at 482 (holding that the "[a]ction" against the insureds "was not based upon the ownership, maintenance, operation, use, loading or unloading of automobiles[,]" but rather the insureds "alleged negligence in failing to supervise and control

---

7. An "occurrence" is defined by the policy as "an accident[ ] ... resulting in bodily injury or property damage."

8. Apparently, a claim of "negligent parental supervision" is subsumed under Restatement (Second) of Torts § 316 (1965), which states:

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unrea-

sonable risk of bodily harm to them, if the parent
 (a) knows or has reason to know that he has the ability to control his child, and
 (b) knows or should know of the necessity and opportunity for exercising such control.

9. We note that it is undisputed that Pearl Pruett is the named insured on Allstate's homeowner's insurance policy. Additionally, the parties do not dispute that Ikaika Pruett qualifies as an "insured person" as defined by the policy.

their child, knowing of his violent and dangerous habits").

Notwithstanding the issue of whether a "negligent parental supervision" claim is covered by the terms of Allstate's policy, the Pruetts overlook that potential "[l]iability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose liability covered by the policy." *Danek v. Hommer*, 28 N.J.Super. 68, 100 A.2d 198, 203 (1953), *aff'd*, 15 N.J. 573, 105 A.2d 677 (1954). Indeed, we have said that a duty to defend "is broader than the duty to pay claims and arises whenever there is a mere *potential* for coverage." *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 287, 875 P.2d 894, 904 (1994) (emphasis in original) (quotation marks and citation omitted). "The possibility may be remote, but if it exists[,] the [insurer] owes the insured a defense." *Id.* (brackets in original) (quotation marks and citation omitted).

However, the duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.*, 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994) (quotation marks and citation omitted). When a claim has not been pled, this court has expressly declined to consider whether that particular claim is covered by the terms of a liability insurance policy. *See Fortune v. Wong*, 68 Haw. 1, 4 n. 1, 702 P.2d 299, 302 n. 1 (1985) (declining to consider "the issue of whether a homeowner's policy affords coverage when negligent entrustment of an automobile is alleged[,]" because " '[n]egligent entrustment' was not pleaded"); *see also County of Kaua'i v. Scottsdale Insurance Co., Inc.*, 90 Hawai'i 400, 403, 978 P.2d 838, 841 (1999) (alleging,

*inter alia*, negligent supervision in the following manner: "The County failed to properly train, *supervise*, hire and discharge its employees and/or agents including but not limited to Officer Abadilla" (emphasis added and brackets omitted)); *Hawaiian Insurance & Guaranty Co., Ltd. v. Chief Clerk of the First Circuit Court*, 68 Haw. 336, 339, 713 P.2d 427, 429 (1986) ("[S]everal suits alleging, *inter alia*, the negligent entrustment of the car by Gerald August Lapenes, Jr. to Mervoine Kaio were brought....").

On January 8, 2004, Federico Casil and Angelina Casil, individually and on behalf of Michelle Casil (collectively, "the Casils"), filed a complaint against the Pruetts alleging, *inter alia*, that "Pearl Pruett is the mother of ... Ikaika Pruett and is thus liable for the negligent actions of her minor son which caused injuries to ... Michelle Casil." It also alleged that "Meredith Pruett was the owner of the car being driven negligently by ... Ikaika Pruett, which car was being driven with the knowledge and consent of" Meredith and, therefore, Ikaika's "negligence is imputed to" Meredith. Ben Manglicmot and Elizabeth Manglicmot, individually and on behalf of Charlene Manglicmot (collectively, "the Manglicmots"), filed a complaint on the same day and made identical allegations against the Pruetts.[10]

It does not appear that these complaints allege "negligent parental supervision." Instead, it appears that the complaints claim vicarious liability and negligent entrustment on the part of Pearl Pruett and Meredith Pruett, respectively. The Pruetts do not argue that the vicarious liability and negligent entrustment claims are covered by the terms of Allstate's homeowner's policy, notwithstanding the applicability of Exclusion No. 5. The Pruetts make their "negligent parental supervision" argument under the assumption that the complaints will be amended sometime in the future pursuant to the Hawai'i Rules of Civil Procedure. The record on appeal does not indicate that any such amendment has been made. Accordingly, we

---

10. To reiterate, on September 7, 2004, the circuit court filed its written order granting Allstate's motion for partial summary judgment. Therein, the circuit court ruled that Allstate was not "obligated" under the terms of the homeowner's insurance policy "to defend or to indemnify any of [the Pruetts] for any claim to recover for injuries sustained in the automobile accident of February 8, 2002, including but not limited to claims for negligent parenting."

decline to express an opinion as to whether a claim of "negligent parental supervision" is covered under the terms of Allstate's homeowner's policy. *See Hawaiian Holiday Macadamia Nut Co.*, 76 Hawai'i at 169, 872 P.2d at 233; *see also Fortune*, 68 Haw. at 4 n. 1, 702 P.2d at 302 n. 1.

The Pruetts also claim that, as the named insured, Pearl Pruett had a reasonable expectation of coverage under the terms of Allstate's homeowner's policy. In *Fortune*, however, this court observed that the parents' purchase of "two policies specifically written to insure the risks associated with the operation of automobiles[ ] . . . belies an expectation on their part that the homeowner's policy would cover [their son's] negligent driving[.]" 68 Haw. at 11, 702 P.2d at 306. Accordingly, this court applied the terms of an exclusion [11] to negate the insurer's liability for damages arising from the accident. *Id.*

Similarly, it is undisputed that Pearl Pruett is the named insured under an automobile insurance policy issued by Allstate. Because Pearl has a policy "specifically written to insure the risks associated with the operation of automobiles[,]" Pearl's expectation that she is also covered under her homeowner's insurance policy is unreasonable. *See Fortune*, 68 Haw. at 11, 702 P.2d at 306.

Finally, the Pruetts claim that Exclusion No. 5 is ambiguous because Ikaika's "act" of taking the keys and vehicle, without a driver's license or permission, "is subject to differing interpretation[s] in the context of" Exclusion No. 5. They also appear to assert that Allstate's "Joint Obligations" [12] clause creates an ambiguity between it and Exclu-

sion No. 5 because "Allstate claims that this [clause] applies to Coverage X[.]"

However, "the rule" construing an ambiguity against an insurer "is not applied without exception upon mere assertions of ambiguity ." *Fortune*, 68 Haw. at 10, 702 P.2d at 306. "Rather, ambiguity is found [and the rule] is followed only when the contract taken as a whole is reasonably subject to differing interpretation." *County of Kaua'i*, 90 Hawai'i at 406, 978 P.2d at 844 (brackets in original) (quotation marks and citation omitted).

As such, the Pruetts' assertion that Ikaika's act creates an ambiguity with the terms of Allstate's policy is without merit because it is the terms of the policy "taken as a whole[,]" and not the actions of the insured, that can be "reasonably subject to differing interpretation." *See id.* Moreover, Allstate did not refer to its "joint obligations" clause in a manner suggesting that it was asserting that the clause constituted an exclusion to coverage. Instead, in an attempt to distinguish a case relied on by the Pruetts, *Worcester Mutual Insurance Co.*, Allstate merely refers to the clause to illustrate that its policy does not have a severability clause. Accordingly, we hold that the circuit court did not err when it determined that the Pruetts were excluded from coverage under the terms of Allstate's homeowner's insurance policy.

## IV. CONCLUSION

Based on the foregoing analysis, we affirm in part and reverse in part the circuit court's October 18, 2004 final judgment.

---

11. The exclusion at issue in *Fortune* excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . . (2) any motor vehicle owned or operated by or rented or loaned to any Insured[.]" 68 Haw. at 10, 702 P.2d at 305.

12. The "joint obligations" clause is contained within the policy's explanation of the "Insuring Agreement," and states:

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that per-

son's resident spouse. These persons are defined as you or your. This means that the responsibilities, acts and omissions of a person defined as you or your will be binding upon any other person defined as you or your.

The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

(Bold omitted.)

**Concurring and Dissenting Opinion by ACOBA, J.**

I concur with the majority's decision except that I disagree with the majority's holding that the Circuit Court of the First Circuit (the court) erred in ruling that liability coverage should be afforded to Defendants/Third Party Plaintiffs–Appellants/Cross–Appellees/Cross–Appellees Pearl Pruett (Pearl) and Ikaika Pruett (Ikaika).

## I.

The following undisputed facts are taken from the parties' briefs and the record on appeal. Pearl is the biological grandmother and adoptive mother of Ikaika who is a minor. Defendant/Third Party Plaintiff–Appellant/Cross–Appellee/Cross–Appellee Meredith Pruett (Meredith) is the biological daughter of Pearl and the biological aunt of Ikaika. Pearl, Ikaika, and Meredith reside in the same household.

On February 8, 2002, Ikaika was involved in an auto accident. The auto involved in the accident was a four wheel private passenger auto owned by Meredith and was insured under an auto insurance policy issued by Third–Party Defendant–Appellee/Cross–Appellant AIG Hawaii Insurance Company (AIG) to Meredith. The auto was not listed on the declarations page of the auto insurance policy issued by Plaintiff–Appellee/Cross–Appellee Allstate Insurance Company (Allstate) to Pearl.

Ikaika was driving the auto without permission from Meredith when he became involved in the accident. On the day of the accident, Ikaika did not have a reasonable belief that he was entitled to operate the vehicle. Defendants–Appellees/Cross–Appellees Charlene Manglicmot (Manglicmot) and Michelle Casil (Casil) have filed claims against Pearl, Meredith, and Ikaika for bodily injury. Defendants–Cross–Appellees Salvador PeBenito and Board of Water Supply, City and County of Honolulu have filed claims against Pearl, Meredith, and Ikaika for property damage.

## II.

Part I of the Allstate auto insurance policy pertained to liability coverage and is entitled "Automobile Liability Insurance Bodily Injury—Coverage AA Property Damage—Coverage BB." The pertinent statement regarding liability coverage reads as follows:

*Allstate will pay for all damages an insured person is legally obligated to pay—because of:*

1. *bodily injury sustained by any person,* and

2. damage to or destruction of property, including loss of use.

Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an *insured auto.*

(Emphases added.) The section under Part I is subtitled "Insured Persons." It defines "Insured Persons" as falling within two categories. Relevant to this case, an insured person is first described in (1)(b) as a resident using the policyholder's "insured auto." No qualification of the insured person being a "relative" or of obtaining "permission" of the policyholder to drive is attached to this definition of an "insured person."

Insured Persons

1. While using your insured auto:

 a) you,[1]

 b) any *resident,*[2] and

 c) *any other person* using it with your permission.

(Some emphases in original and some added.)

Second, in (2)(b) of the same section, an insured person is also described as a "resident relative using a four wheel private passenger auto" that is a "non-owned auto."

2. *While using a non-owned auto:*

 a) you,

---

1. "You" is defined, *inter alia,* as "the policyholder named on the declarations page[.]"

2. "Resident" is defined as one having "physical presence in [the named policy holder's] household with the intention to continue living there."

b) *any resident relative using a four wheel private passenger auto* or *utility auto.*

(Some emphases in original and some added.)

There is a policyholder "relative" qualification in 2(b). Similar to the "resident" reference in the first definition of insured persons in (1)(b), no "permission" to drive qualification is attached to the status of an insured person described in (2)(b). Plainly, Ikaika falls within the (2)(b) category of insured persons inasmuch as he is a resident relative who used a "non-owned auto" that was "a four wheel private passenger auto."[3]

Immediately following the section defining insured persons in the Allstate auto insurance policy is a section subtitled "Insured Autos." Relevant to this case, that section states:

*Insured Autos*

1. *Any auto described on the declarations page.* This includes the four wheel private passenger *auto* or *utility auto you* replace it with.

. . . .

4. A non-owned *auto* used by *you* or a *resident* relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person.

(Some emphases in original and some added.)[4] The Pruetts do not argue that Ikaika

---

**3.** As is evident from the face of these provisions concerning an insured person, "permission" is wholly irrelevant where the insured person is a "resident."

**4.** "Insured Autos" also includes the following definitions:

2. An additional four wheel private passenger *auto* or *utility auto* you become the owner of during the premium period. This auto will be covered if *we* insure all other private passenger autos or *utility autos you* own. *You* must, however, tell us within 60 days of acquiring the auto. *You* must pay any additional premium.

3. A substitute four wheel private passenger *auto* or *utility auto,* not owned by *you* or a *resident,* being temporarily used while *your* insured *auto* is being serviced or repaired, or if *your* insured *auto* is stolen or destroyed.

. . . .

5. A trailer while attached to an insured auto. The trailer must be designed for use with a private passenger *auto* or *utility auto.*

---

was driving an "insured auto." Allstate is correct that the car involved in the accident was not an insured auto under the policy terms.[5]

III.

Allstate argued before the court that liability coverage should not be provided to Ikaika and Pearl under its auto insurance policy because "in order to have coverage" there must be both an "insured person" and an "insured auto." According to Allstate, liability coverage should be denied to Pearl and Ikaika because he was not driving an "insured auto." The majority agrees with Allstate that because the accident-related claims in question do not involve the use of an "insured auto," Allstate was not bound to afford liability coverage to Ikaika.

However, Allstate's auto insurance policy was ambiguous in that it did not provide that liability coverage was limited to an "insured person" using an "insured auto" as opposed to an "insured person" using a "non-owned auto." To reiterate, Part I provides that Allstate will pay all damages an insured person is legally obligated to pay because of bodily injury sustained by "any person," *i.e.,* Manglicmot and Casil.

This policy statement is not qualified by any language limiting coverage only to insured persons using insured autos. Allstate

---

This trailer can't be used for business purposes with other than a private passenger *auto* or *utility auto.*

**5.** The car did not meet the first definition of an insured auto because the auto driven by Ikaika apparently was not described on the declarations page. The car in question did not meet the second definition of an insured auto because Pearl was not the owner of the auto. The car in question did not meet the third definition of an insured auto because there is no evidence in the record, and neither party asserts, that the auto was being temporarily used while an insured auto was being serviced or repaired or while an insured auto was stolen or destroyed. The car in question did not meet the fourth definition of an insured auto because it is undisputed that the auto was not being used with the owner's (Meredith's) permission. The car in question does not meet the fifth definition of an insured auto because it is not a trailer.

owed coverage to Ikaika under the unambiguous language of this provision. As the court ruled, Ikaika was an "insured person" under the Allstate auto insurance policy insofar as he was (1) a "resident relative" of the policyholder, Pearl, named on the declarations page, and (2) was using a "four wheel private passenger auto[.]" As mentioned before, Ikaika comes within the second category of an "Insured Person" as noted above in (2)(b); insured person defined as one who uses "a non-owned auto."

By virtue of that definition, an insured person includes "any resident relative using a four wheel private passenger auto" if using a "*non-owned auto.*" (Emphasis added.) However, the second paragraph in Part I, as set forth above, states that "[u]nder these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto." As opposed to insured auto, the term non-owned auto is not defined. However, the term indisputably applies to the vehicle Ikaika was using at the time of the accident. *See Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000) (explaining that "insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended" (citation, quotation marks, and brackets omitted)). Accordingly, the reference to an insured person in (2)(b) as being one who, while using "a non-owned auto," is "a resident relative" using a "four wheel private passenger auto," creates a patent ambiguity when read with the statement that coverage would be provided to insured persons using an insured auto.[6]

Allstate's argument that liability coverage is limited only to insured persons using in-sured autos, then, is inconsistent with the reading that an insured person such as a resident is afforded coverage while driving a non-owned auto as well as the policyholder's "insured auto." Under the circumstances, the issue of liability coverage under the policy must be resolved in favor of the insured and against the insurer. *See Tri–S Corp. v. Western World Ins. Co.*, 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006) (explaining that ambiguities must be resolved in favor of the insured and "policies are to be construed in accord with the reasonable expectations of a layperson"); *Oahu Transit Services, Inc. v. Northfield Ins. Co.*, 107 Hawai'i 231, 235, 112 P.3d 717, 721 (2005) (stating that if the automobile exclusion provision in the insurance policy in question were ambiguous, "this court would construe [the] phrase in favor of the insured"); *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 458, 99 P.3d 96, 109 (2004) (holding that the ambiguity in the term of the insurance contract should be resolved in favor of the insured); *Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 277, 948 P.2d 1103, 1118 (1997) (stating that this court must "resolve any contractual ambiguities against the insurer"); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 110 n. 5, 839 P.2d 10, 25 n. 5 (1992) (noting that there is a "fundamental principle that any ambiguities in a contract should be interpreted most strongly against the party who has drafted the language . . . where a contract is open to more than one reasonable construction"); *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 209, 684 P.2d 960, 964 (1984) (explaining that "[b]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer" (internal quotation marks and citations omitted)).[7] For the foregoing reasons I would

---

6. Even more confusing is the fact that in the definition of "insured persons" as applied to a "resident," permission is wholly irrelevant, *see supra* note 3, whereas no. 4 in the definition of "insured autos" describes an insured auto as a non-owned auto used with the owner's permission.

7. I agree with the majority that the court did not err in determining that the Pruetts were excluded from coverage under Allstate's homeowner's insurance policy. However, I disagree with the majority's interpretation of *Fortune v. Wong*, 68 Haw. 1, 702 P.2d 299 (1985), to support its argument that the Pruetts had no reasonable expectation of coverage under the Allstate home-

affirm the court's determination of liability coverage under the Allstate policy.

owner's policy. In the case of *Fortune*, the homeowners insurance policy contained an exclusion that "declared in unambiguous language that it did not apply to bodily injury arising from the operation of a motor vehicle by an insured." *Id.* at 11, 702 P.2d at 306. In light of this exclusionary provision, the court held that it could not be concluded that liability for the insured's negligent operation of his motor vehicle "was within the intendment of the parties." *Id.*

Furthermore, the parents of the insured, who were insureds themselves under the homeowner's policy, "purchased *two* policies specifically written to insure the risks associated with operation of automobiles." *Id.* (emphasis added). The *Fortune* court cited the purchase of the two auto insurance policies in its conclusion that there were no "grounds for inferring the insured[s] could have reasonably expected their homeowner's policy to insure the risk of [the insured's] negligence in driving." *Id.*

Consequently, *Fortune* should not be read as establishing a presumption that an insured has no reasonable expectation of coverage for motor vehicle accidents under his or her homeowner's policy if the insured has an auto insurance policy written specifically to insure against liability arising from motor vehicle accidents. Rather, the *Fortune* court considered the unambiguous exclusion provision in the homeowner's insurance policy excluding coverage for motor vehicle accidents in conjunction with the insureds' purchase of two auto insurance policies in its determination that the insureds did not have a reasonable expectation of coverage under the homeowner's policy for the motor vehicle accident.

Like the insured in *Fortune*, Pearl had a policy, *i.e.* the Allstate auto policy, specifically written to insure the risks associated with automobile operation. As in *Fortune*, in this case there was an exclusion provision in Pearl's homeowner's policy with Allstate that clearly stated coverage would not be provided for "bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." It is the presence of an unambiguous exclusion provision in the homeowner's policy excluding coverage for auto accidents that makes an expectation of such coverage unreasonable.